# HENRY *v.* HENKEL, UNITED STATES MARSHAL.

## APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 216.   Argued February 24, 25, 1914.—Decided November 30, 1914.

No hard and fast rule has as yet been announced as to how far the court will go in passing upon questions raised in *habeas corpus* proceedings.

Barring exceptional cases, the general rule is that on applications for *habeas corpus*, the hearing is confined to the single question of jurisdiction, and even that will not be decided in every case.

The hearing on *habeas corpus* is not in the nature of a writ of error, nor is it intended as a substitute for the functions of the trial court.

This rule applies equally whether the petitioner is committed for trial within the district or held under warrant of removal to another State. *Ex parte Royall*, 117 U. S. 241.

A citizen cannot be held for custody or removed for trial where there is no provision of common law or statute making an offense of the acts charged, as in such case the committing court would have no jurisdiction as the prisoner would be in custody without warrant of law.

Every act of Congress is presumptively valid and a committing magistrate cannot properly treat as invalid a statutory declaration of what should constitute an offense except where the act is palpably void.

Whether Congress has power to compel a witness in a congressional inquiry to make material and non-criminatory disclosures, and whether the district judge has jurisdiction to commit on the ground that the statute punishing the witness for refusal to disclose is unconstitutional, are questions for the determination of the trial court and not on a proceeding in *habeas corpus*.

207 Fed. Rep. 805, affirmed.

THE facts, which involve the jurisdiction of courts on *habeas corpus* proceedings and to what extent the court will pass upon questions of jurisdiction and the merits of the case before the trial, are stated in the opinion.

*Mr. John C. Spooner*, with whom *Mr. Paul D. Cravath*, *Mr. John D. Lindsay* and *Mr. Stuart McNamara* were on the brief, for appellant:

The petitioner was not a wilfully recalcitrant witness.

Even though the language of the statute were susceptible of a construction broad enough to cover the case at bar, it should not be so construed because such a construction was not within the intention of Congress.

Such a construction would be repugnant to the representative character of the American government.

That there was an intention on the part of Congress that the act should not apply to inquiries in aid of legislation is implied in the title.

This is made plain by a consideration of the act as a whole. It contains no provision for the judicial deter-

mination of the pertinency or relevancy of questions, which is usual in statutes authorizing inquiries in aid of legislation, before proceeding to imprison the witness for his refusal to answer. The first section refers only to those matters in respect of which Congress may competently take definitive action; the presence of the word "pertinent" is inconsistent with any other view; the second or immunity clause demonstrates the purpose of so limiting the operation of the act. This intent is confirmed by the language of the third section.

For the situation as it existed at the time the act was passed and as it was pressed upon the attention of Congress, see the *Simonton Case* and report of the select committee and introduction of the bill.

The history of the period is shown by the debates. Cong. Globe, 34th Cong., 3d Sess., pp. 275 *et seq.*

This is the first occasion on which an attempt has been made to have the statute construed as applying to inquiries in aid of legislation. See Cases of *Wolcott* in 1858; of *Kilbourn* in 1876; of *Chapman* in 1894.

If the statute is to be so construed as to make it applicable to inquiries in aid of legislation it is unconstitutional.

Any forcible intrusion into and compulsory exposure of the private affairs of the individual except when the general good requires it, is violative of the Fourth and Fifth Amendments.

The power to invade the right of privacy can be justified only on the ground of necessity; such a power is not necessary for the exercise by Congress of its function of legislation. This question was raised but not decided in *Kilbourn* v. *Thompson*, 103 U. S. 168. It was expressly decided in the negative by the Privy Council in *Kielley* v. *Carson*, 4 Moore, P. C. 63, a decision which this court has treated with high respect.

The decisions holding that state legislatures possess

the power are not conclusive here as Congress has not always thought it had the power; nor is the practice of recent years evidence of the constitutionality of the practice.

The questions which the appellant refused to answer were not pertinent to the question under inquiry nor was the information which they sought to elicit necessary or material.

· If the committee had known the names of the national bank officers which the appellant refused to disclose, they would not have been able to examine, through such officers, or otherwise, into the transactions or affairs of the banks themselves. ·

In support of these contentions, see *Matter of Barnes*, 204 N. Y. 108; *Boyd* v. *United States*, 116 U. S. 616; *Briggs* v. *Mackellar*, 2 Abb. Pr. (N. Y.) 30; *Burnham* v. *Morrissey*, 14 Gray, 226; *Chapman Case*, Smith's Digest, 583; *In re Chapman*, 166 U. S. 661; *Cooper's Case*, 32 Vermont, 253; *Matter of Davies*, 168 N. Y. 89; *Doyle* v. *Falconer*, L. R., 1 P. C. 328; *In re Falvey*, 7 Wisconsin, 630; *Fenton* v. *Hampton*, 11 Moore, P. C. 347; *Guthrie* v. *Harkness*, 199 U. S. 148; *Harriman* v. *Int. Com. Comm.*, 211 U. S. 407; *Heike* v. *United States*, 227 U. S. 131; *Int. Com. Comm.* v. *Brimson*, 154 U. S. 447; *Kielley* v. *Carson*, 4 Moore, P. C. 63; *Kilbourn Case*, Smith's Digest, 536; *Kilbourn* v. *Thompson*, 103 U. S. 168; *Loan Association* v. *Topeka*, 20 Wall. 655; *McLean* v. *United States*, 226 U. S. 374; *Muskrat* v. *United States*, 219 U. S. 346; *Nor. Pac. Ry. Co.* v. *Washington*, 222 U. S. 370; *Oceanic Nav. Co.* v. *Stranahan*, 214 U. S. 320; *Omaha Street Ry.* v. *Int. Com. Comm.*, 230 U. S. 324; *In re Pacific Ry. Comm.*, 32 Fed. Rep. 241; *McDonald* v. *Keeler*, 99 N. Y. 463; *Ex parte Robinson*, 19 Wall. 505; *Robinson* v. *Phil. & R. R. Co.*, 28 Fed. Rep. 340; *Simonton Case*, Smith's Digest, 85; *Slaughter House Cases*, 16 Wall. 36; *Standard Oil Co.* v. *United States*, 221 U. S. 1; *Stockdale* v. *Hansard*, 9 Ad. & E. 1; *United States* v. *Press Publishing*

*Co.,* 219 U. S. 1; *United States* v. *Trans-Missouri Assn.,*
166 U. S. 290; *Wertheim* v. *Continental R. & T. Co.,* 15
Fed. Rep. 716; *Wolcott Case,* Smith's Digest, 201.

*The Solicitor General,* with whom *Mr. W. C. Herron* was
on the brief, for the United States:

The points attempted to be made by appellant are not
open in this proceeding. *Beavers* v. *Henkel,* 194 U. S. 73;
*Benson* v. *Henkel,* 198 U. S. 1; *Glasgow* v. *Moyer,* 225 U. S.
420; *Greene* v. *Henkel,* 183 U. S. 249; *Hyde* v. *Shine,* 199
U. S. 62; *In re Chapman,* 156 U. S. 211; *Johnson* v. *Hoy,*
227 U. S. 245; *Riggins* v. *United States,* 199 U. S. 547;
*Tinsley* v. *Treat,* 205 U. S. 20.

Revised Statutes, § 102, covers an investigation of the
character undertaken in the case at bar. *In re Chapman,*
166 U. S. 661.

Revised Statutes, §§ 102 *et seq.,* are constitutional. *In
re Chapman,* 166 U. S. 661; *Kilbourn* v. *Thompson,* 103
U. S. 168.

For state court decisions upholding the power of a legisla-
tive body to summon witnesses and to compel them to an-
swer questions on inquiry in aid of legislation, see *Briggs*
v. *Mackellar,* 2 Abb. Pr. (N. Y.) 30; *Burnham* v. *Morrissey,*
14 Gray, 226; *McDonald* v. *Keeler,* 99 N. Y. 463; *Wickel-
hausen* v. *Willett,* 10 Abb. Pr. (N. Y.) 164 (aff'd *Wilckens*
v. *Willet,* 1 Keyes, 521).

The questions were pertinent to the inquiry.

In support of these contentions, see *Beavers* v. *Henkel,*
194 U. S. 73; *Benson* v. *Henkel,* 198 U. S. 1; *Briggs* v.
*Mackellar,* 2 Abb. Pr. (N. Y.) 30; *Burnham* v. *Morrissey,*
14 Gray, 226; *Doyle* v. *Falconer,* L. R. 1 P. C. 328; *Fenton*
v. *Hampton,* 11 Moore, P. C. 347; *Glasgow* v. *Moyer,* 225
U. S. 420; *Grant* v. *United States,* 227 U. S. 74; *Greene* v.
*Henkel,* 183 U. S. 249; *Hyde* v. *Shine,* 199 U. S. 62; *Hyde* v.
*United States,* 225 U. S. 347; *In re Chapman,* 156 U. S. 211;
*In re Chapman,* 166 U. S. 661; *In re Falvey,* 7 Wisconsin,

630; *Int. Com. Comm.* v. *Brimson,* 154 U. S. 447; *Johnson* v. *Hoy,* 227 U. S. 245; *Kielley* v. *Carson,* 4 Moore, P. C. 63; *Kilbourn* v. *Thompson,* 103 U. S. 168; *McDonald* v. *Keeler,* 99 N. Y. 463; *Riggins* v. *United States,* 199 U. S. 547; *Tinsley* v. *Treat,* 205 U. S. 20; *Wickelhausen* v. *Willett,* 10 Abb. Pr. (N. Y.) 164 (aff'd in *Wilckens* v. *Willet,* 1 Keyes, 521)..

MR. JUSTICE LAMAR delivered the opinion of the court.

In the 62nd Congress, the House of Representatives (H. R. 429, 504) adopted a resolution authorizing the members of the Committee on Banking and Currency to investigate and make a report as to the financial affairs and activities of National Banks, interstate corporations and groups of financiers as a basis for remedial and other legislative purposes. To that end the Committee was authorized to send for persons and papers and to swear witnesses.

Among those summoned and sworn was the appellant, George G. Henry, who was examined at length as to many matters relating to the formation of syndicates and the flotation of stock. He testified that he was a member of the firm of Salamon & Co., bankers in New York, who were accustomed to form syndicates for the acquisition and sale of blocks of stock and to grant participation therein to trust companies and national banks—their directors and corporate officers also being frequently members of the same syndicate. In reference to one of these transactions he testified that Salamon & Co. had agreed to pay $8,215,262 for $22,500,000 preferred and common stock in a California oil company; thereupon Salamon & Co., Lewisohn Bros., Hallgarten & Co., bankers in New York, together with a fourth banking firm (whose name witness did not disclose) had then formed a syndicate for acquiring and disposing of this

$22,500,000 of oil stock. He testified how the shares were allotted, and that 12½ per cent. went to the unnamed persons in the banking group; that in the subsequent disposition of the stock a number of shares were acquired by 15 individuals, some of whom were officers of National Banks located in New York, Chicago and Detroit. Other shares were allotted to those who were officers in Trust Companies in New York and Chicago. Letters were written offering to allot part of this oil stock to the New York syndicate, but before acceptance of the allotment all of the stock had been sold at a profit of nearly $500,000, a part of which went to the members of the New York syndicate (officers of banks), even though they had not previously accepted the allotment. They thus, in effect, received a present of their share of the profits. He was asked to give the names of those composing the New York syndicate, but claimed to have the right under the Constitution to decline to answer the question, saying also that he "did not want to disclose the names of the participants in the New York syndicate, although he understood it to be the wish of the subcommittee that he should, for the reason that he would consider it dishonorable to reveal the names of his customers unless compelled to do so."

The Committee ordered the fact of his refusal to answer to be reported to the House for action—majority and minority reports being made. After discussion, the House of Representatives directed that the facts should be laid before the Grand Jury of the District of Columbia. That body returned an indictment against Henry charging him with refusing to answer questions propounded by the Committee. Rev. Stat., §§ 101–104. A warrant issued and Henry was arrested in New York and when taken before the Commissioner demanded an examination.

On the hearing and before the introduction of any testimony, he moved for his discharge on the ground that

the Commissioner was without jurisdiction, since it appeared on the face of the complaint that petitioner was not charged with any offense against the United States.

The motion was denied and, it having been admitted that Henry was the person described in the indictment, the Government introduced the bench warrant and a certified copy of the indictment as sufficient proof of probable cause.

The petitioner then offered in evidence the Resolution defining the scope of the inquiry, with a transcript of his testimony before the Committee—including the question which he refused to answer and his reasons therefor. Copies of the majority and minority Reports to the House were also incorporated in the record. After argument the Commissioner ordered Henry to be held in custody until the District Judge could issue a warrant for his removal to the District of Columbia under the provisions of Section 1014, Revised Statutes.

Thereupon Henry applied to the District Judge for a writ of *habeas corpus*, and on the hearing introduced all of the testimony that had been submitted to the Commissioner, and asked for his discharge on grounds similar to those which had been presented to the committing magistrate.

After argument the District Judge discharged the writ, and an appeal was entered to this court where petitioner's counsel, renewing the objections made in the District Court, insist that the Resolution did not authorize an inquiry as to the matter about which Henry refused to testify; that the facts charged do not constitute an offense under the statute; or, if so, that the statute is void. On the authority of *In re Chapman*, 166 U. S. 661, 668; *Kilbourn* v. *Thompson*, 103 U. S. 168, and other cases, they insist that in the trial of contested elections, in cases involving the expulsion of members, or other quasi-judicial proceedings, the House or Senate may, like any other

court, compel material and non-criminatory disclosures. But they argue that, in view of the provisions of the Fourth Amendment to the Constitution, neither House can compel a citizen to disclose his private affairs as a basis for legislation—particularly where, as in the present case, the witness was not contumacious, but had fully and freely answered all material questions; had disclosed the fact that National Banks and their officers were often members of the same syndicate, and had only refused to give the names of certain bank officials when the names themselves could not by any possibility be of assistance in shaping legislation. They, therefore, contend that the papers show on their face that there was no jurisdiction to issue the warrant on which he was held and that Henry should not be subjected to the hardship of being removed to the District of Columbia to stand trial upon an indictment which affirmatively shows that no crime has been committed.

The Government, on the other hand, insists that Rev. Stat., § 104, is constitutional and that Congress may provide for the punishment of witnesses who, in answer to a question propounded by its authority, fail to make non-criminatory disclosures and furnish information deemed necessary as a basis for legislation.

These important and far-reaching questions, though elaborately argued, should not be decided on this record, in view of the rule, relied on by the Government, that such issues must primarily be determined by the trial court.

The petitioner, however, relying specially on *Greene* v. *Henkel*, 183 U. S. 249, 261; *Beavers* v. *Henkel*, 194 U. S. 73; *Tinsley* v. *Treat*, 205 U. S. 20, claims that as this is a removal case, with the special hardships attendant thereon, it is to be distinguished from those in which the foregoing rule has been announced.

When a person under arrest applies for discharge on

writ of *habeas corpus* the issue presented is whether he is unlawfully restrained of his liberty. Rev. Stat., § 752. But there is no unlawful restraint where he is held under a valid order of commitment, so that in strict logic the inquiry might extend to the legal sufficiency of the order. In view, however, of the nature of the writ and of the character of the detention under a warrant, no hard and fast rule has been announced as to how far the court will go in passing upon questions raised in *habeas corpus* proceedings. In cases which involve a conflict of jurisdiction between state and Federal authorities, or where the treaty rights and obligations of the United States are involved, and in that class of cases pointed out in *Ex parte Royall*, 117 U. S. 241; *Ex parte Lange*, 18 Wall. 163; *New York* v. *Eno*, 155 U. S. 89; *In re Loney*, 134 U. S. 372, the court hearing the application will carefully inquire into any matter involving the legality of the detention and remand or discharge as the facts may require. But, barring such exceptional cases, the general rule is that, on such applications, the hearing should be confined to the single question of jurisdiction, and even that will not be decided in every case in which it is raised. For otherwise the "*habeas corpus* courts could thereby draw to themselves, in the first instance, the control of all prosecutions in state and Federal courts." To establish a general rule that the courts on *habeas corpus*, and in advance of trial, should determine every jurisdictional question would interfere with the administration of the criminal law and afford a means by which, with the existing right of appeal, delay could be secured when the Constitution contemplates that there shall be a speedy trial, both in the interest of the public, and as a right to the defendant.

The question has been before this court in many cases— some on original application and others on writ of error; in proceedings which began after arrest and before commitment; after commitment and before conviction; after

conviction and before review. The applications were based on the ground of the insufficiency of the charge, the insufficiency of the evidence, or the unconstitutionality of the statute, state or Federal, on which the charge was based. In some of the cases the applicants have advanced the same arguments that are here pressed, including that of the hardship of being taken to a distant State for trial upon an indictment alleged to be void.

But in all these instances, and notwithstanding the variety of forms in which the question has been presented, the court, with the exceptions named, has uniformly held that the hearing on *habeas corpus* is not in the nature of a writ of error nor is it intended as a substitute for the functions of the trial court. Manifestly, this is true as to disputed questions of fact, and it is equally so as to disputed matters of law, whether they relate to the sufficiency of the indictment or the validity of the statute on which the charge is based. These and all other controverted matters of law and fact are for the determination of the trial court. If the objections are sustained or if the defendant is acquitted he will be discharged. If they are overruled and he is convicted he has his right of review. *Kaizo* v. *Henry*, 211 U. S. 146, 148. The rule is the same whether he is committed for trial in a court within the district or held under a warrant of removal to another State. He cannot, in either case, anticipate the regular course of proceeding by alleging a want of jurisdiction and demanding a ruling thereon in *habeas corpus* proceedings. *Glasgow* v. *Moyer*, 225 U. S. 420; *In re Gregory*, 219 U. S. 210; *Ex parte Simon*, 208 U. S. 144; *Johnson* v. *Hoy*, 227 U. S. 245; *Urquhart* v. *Brown*, 205 U. S. 179; *Hyde* v. *Shine*, 199 U. S. 62; *Beavers* v. *Henkel*, 194 U. S. 73; *Riggins* v. *United States*, 199 U. S. 547, 551; *Ex parte Royall*, 117 U. S. 241.

The last of these decisions is particularly in point not only because of the applicability of its reasoning to the

present case, but because of the fact that the writ was there denied even though the statute, on which the charge was based, was ultimately held to be void. *Royall* v. *Virginia*, 116 U. S. 572, 579, 583; *Same* v. *Same*, 121 U. S. 102, 104; *In re Royall*, 125 U. S. 696.

The cases cited do not, of course, lead to the conclusion that a citizen can be held in custody or removed for trial where there was no provision of the common law or statute making an offense of the acts charged. In such case the committing court would have no jurisdiction, the prisoner would be in custody without warrant of law and therefore entitled to his discharge. *Greene* v. *Henkel*, 183 U. S. 249, 261. But the presumption is in favor of the validity of every act of Congress and it would not be proper for the committing magistrate to treat as invalid a statutory declaration of what should constitute an offense, except in those rare and extreme cases in which the act was plainly and palpably void.

Neither the issue nor the basis of the decision is changed when the person held under the warrant applies to a District Judge for discharge on writ of *habeas corpus*. So likewise the same issue and the same rule of decision must govern when the case is here on appeal from the order of the *habeas corpus* tribunal. It follows therefore that this court should not on this record pass on the jurisdictional questions presented. They like all other controverted issues in the case are for the determination of the courts of the District of Columbia when the defendant is therein put to his trial.

*Judgment affirmed.*

MR. JUSTICE McREYNOLDS took no part in the consideration or decision of this case.