**UNITED STATES v. MOORE et al.**

(District Court, E. D. Illinois. August 3, 1925.)

1. Criminal law ⟨key⟩242(8)—Committing tribunal can decide only whether defendants shall attend court which is ultimately to pass upon their guilt or innocence.

In removal proceedings under Rev. St. § 1014 (Comp. St. § 1674), committing tribunal can decide only whether defendants shall attend court which is ultimately to pass on their guilt or innocence, and only issue is whether evidence makes prima facie case for prosecution sufficient to hold defendants for trial.

2. Criminal law ⟨key⟩242(6)—Sufficiency of indictment is to be determined by court in which it was found in removal proceedings.

Sufficiency of indictment is to be determined by court in which it was found, and is not a matter of inquiry in removal proceedings under Rev. St. § 1014 (Comp. St. § 1674).

**3. Criminal law ⟷242(8) — Controverted questions of law and fact are for trial court in removal proceedings.**

In proceedings under Rev. St. § 1014 (Comp. St. § 1674), to remove defendants to another district for trial, all controverted questions of law and fact are for the trial court.

**4. Criminal law ⟷242(7) — Competent evidence to justify removal is not necessarily competent evidence to convict.**

Competent evidence to justify removal for trial in another district is not necessarily competent evidence to convict.

**5. Criminal law ⟷242(8)—Committing court in removal proceedings not required to determine whether offense has been committed.**

Committing court in proceedings to remove defendants to another district for trial is not called upon to determine whether offense charged has in fact been committed.

**6. Criminal law ⟷242(8)—Function exercised by committing magistrate in removal proceedings stated.**

In removal proceedings, committing magistrate exercises something more than a mere ministerial function involving no judicial discretion, since he must look into the indictment to ascertain whether an offense against the United States is charged, and find whether there was probable cause, and determine whether court to which accused is sought to be removed has jurisdiction of the same.

**7. Criminal law ⟷242(5)—Indictment is competent evidence, acceptable at face value in removal proceedings.**

In proceedings to remove defendants to another district for trial, indictment is to be considered as competent evidence, and court must accept its every allegation at face value.

**8. Monopolies ⟷31—Allegations of indictment held to charge a violation of the Sherman Anti-Trust Act.**

In prosecution for violation of Sherman Anti-Trust Act, § 1 (Comp. St. § 8820), by engaging in combination in restraint of interstate commerce, allegations of indictment *held* to charge an offense.

**9. Criminal law ⟷242(8)—Committing court in removal proceedings required only to determine whether there is evidence of probable cause.**

In proceedings to remove defendants to another district for trial, it is not the duty of committing court to go into question of who tells the truth, to weigh testimony, or to consider credibility of witnesses, but court is required to determine only if there is evidence of probable cause.

**10. Criminal law ⟷242(7)—Evidence held to show probable cause justifying removal of defendants in prosecution for violation of Sherman Anti-Trust Act.**

In removal proceedings in prosecution for violation of Sherman Anti-Trust Act, § 1 (Comp. St. § 8820), evidence *held* to show probable cause justifying removal of defendants.

At Law. Proceeding by the United States to remove F. G. Moore and another for trial, in a district other than that of their residence, of an indictment charging a violation of section 1, Sherman Anti-Trust Act. Removal ordered.

W. O. Potter, U. S. Atty., of Marion, Ill., L. T. Allen, Asst. U. S. Atty., of Danville, Ill., and Roger Shale and Russell Hardy, Sp. Assts. Atty. Gen., for the United States.

Wm. Acton and Walter T. Gunn, both of Danville, Ill., James Dyer, of Hoopeston, Ill., and Herbert Pope, Allen J. Carter, and Melvin M. Hawley, all of Chicago, Ill., for defendants.

LINDLEY, District Judge. This is a removal proceeding. The defendants Willard and Moore reside within the Eastern District of Illinois, and the government seeks to remove them to the Northern District of Ohio, to stand trial upon an indictment returned in that district on March 27, 1924, charging them, together with 45 other persons and 47 corporations, with having engaged in a combination in restraint of interstate trade and commerce in malleable iron castings, in violation of section 1 of Act July 2, 1890 (26 Stat. 209), known as the Sherman Anti-Trust Act (Comp. St. § 8820).

The procedure to remove persons charged with violating the laws of the United States from districts in which they reside, or may be apprehended, to districts where indictments may be pending against them, is established by section 1014, R. S. U. S. (Comp. St. § 1674), which reads as follows: "For any crime or offense against the United States, the offender may, by any justice or judge of the United States, or by any commissioner of a circuit court to take bail, or by any chancellor, judge of a supreme or superior court, chief or first judge of common pleas, mayor of a city, justice of the peace, or other magistrate, of any state where he may be found, and agreeably to the usual mode of process against offenders in such state, and at the expense of the United States, be arrested and imprisoned, or bailed, as the case may be, for trial before such court of the United States as by law has cognizance of the offense. Copies of the process shall be returned as speedily as may be into the clerk's office of such court, together with the recognizances of the witnesses for their appearance to testify in the case. And where any offender or witness is committed in any district other than that

where the offense is to be tried, it shall be the duty of the judge of the district where such offender or witness is imprisoned, seasonably to issue, and of the marshal to execute, a warrant for his removal to the district where the trial is to be had."

[1] This tribunal can decide only whether these defendants shall attend the court which is ultimately to pass upon the question of their guilt or innocence. It is sitting merely as a committing magistrate. There is not and cannot well be any uniform rule determining how far an examining magistrate should hear the witnesses produced by an accused person, but the proceeding is not a trial. The issue is confined to the single question of whether the evidence makes a prima facie case for the prosecution sufficient to make it necessary to hold the party for trial (Charlton v. Kelly, 229 U. S. 447, 461, 33 S. Ct. 945, 57 L. Ed. 1274, 46 L. R. A. [N. S.] 397), and not to determine whether the evidence is sufficient to justify a conviction (Collins v. Loisel, 259 U. S. 309, 315, 316, 317, 42 S. Ct. 469, 66 L. Ed. 956).

[2-5] Furthermore, the sufficiency of the indictment is to be determined by the court in which it was found, and is not a matter of inquiry in removal proceedings. Beavers v. Henkel, 194 U. S. 73, 87, 24 S. Ct. 605, 48 L. Ed. 882. In other words, the committing magistrate cannot conclusively adjudge the indictment to be either good or bad, or pass finally upon the guilt or innocence of the accused. His decision discharging the prisoner neither annuls the indictment nor blots out the offense. The trial court alone has plenary jurisdiction over the cause, and consequently it alone has plenary power to pass upon the sufficiency of the indictment as the pleading which initiated and is the foundation of the prosecution. Morse v. United States, 45 S. Ct. 209, 69 L. Ed. 522, Feb. 2, 1925. "A judgment in a preliminary examination discharging an accused person for want of probable cause is not conclusive upon the question of his guilt or innocence and constitutes no bar to a subsequent trial in the court to which the indictment is returned. * * * A discharge for insufficient evidence will not preclude a second inquiry." Morse v. U. S., supra. All controverted questions of law and fact are for the trial court. Henry v. Henkel, 235 U. S. 219, 35 S. Ct. 54, 59 L. Ed. 203; Louie v. U. S., 254 U. S. 548, 41 S. Ct. 188, 65 L. Ed. 399; Rodman v. Pothier, 264 U. S. 399, 44 S. Ct. 360, 68 L. Ed. 759. Competent evidence to justify removal is not necessarily evidence competent to convict. Fernandez v. Phillips, 45 S. Ct. 541, 69 L. Ed. —— (May 25, 1925). This court is not called upon to determine whether the offense charged has in fact been committed. Dumbra v. U. S., 45 S. Ct. 546, 69 L. Ed. —— (May 25, 1925).

[6] The grand jury of the Northern District of Ohio, under the Constitution and laws of the United States, found that there was probable cause and returned an indictment. Final trial can be had only in the same forum. But it has been repeatedly held that in such cases the committing magistrate exercises something more than a mere ministerial function, involving no judicial discretion. He must look into the indictment to ascertain whether an offense against the United States is charged, find whether there was probable cause, and determine whether the court to which the accused is sought to be removed has jurisdiction of the same. Tinsley v. Treat, 205 U. S. 20, 29, 27 S. Ct. 430, 51 L. Ed. 689.

Concerning this indictment, the court of original jurisdiction upon demurrer said: "The indictment is unexceptionable, both as to form and substance. It states adequately the venue of the crime charged as within the jurisdiction of this court. The crime is adequately alleged to be a continuing conspiracy, in which all of the corporate and individual defendants have been during the past five years and still are engaged, and is not, therefore, barred by the statute of limitations. The criminal participation of the individual defendants, as officers having the active management, direction, and control of the interstate trade and business of the corporate defendants engaged in the illegal combination or conspiracy, is sufficiently averred within the authorities and within the terms of section 14, Act Oct. 15, 1914, known as the Clayton Act (Comp. St. § 8835m). The elements of the crime are not only charged in the language of the statute, but the means whereby the combination or conspiracy is and has been formed and carried on, and the details thereof, adequate to identify the specific combination or conspiracy and to enable the defendants to prepare for trial and to protect them against a new prosecution in the event of acquittal or conviction, are likewise all set forth with particularity and definiteness. If the allegations of the indictment are proved, each and all of the defendants are guilty of a violation of section 1 of the Sherman Act." It follows that this court has nothing to say concerning the validity of the indictment. If

the trial court was wrong in its determination, the courts of review will so declare, but it is beyond what this court believes to be a proper conception of its power to review that decision or declare it erroneous.

[7] But the indictment is to be considered as competent evidence. Beavers v. Henkel, 194 U. S. 73, 24 S. Ct. 605, 48 L. Ed. 882, and other cases supra. The government submitted it upon such theory and rested. Certain evidence was then submitted by the defendants, and, in connection with its cross-examination of defendants' witnesses, the government submitted additional evidence. The defendants submitted evidence tending to prove that competition between participants in the malleable iron business exists in its untrammeled form; that the prices of the wares produced are governed by the natural laws of economics, and not by any artificial means; that there was no agreement participated in by the defendants to limit production or divide customers; and that there has been no violation of the Sherman law. Under the ruling of the Supreme Court, this court must accept every allegation in the indictment at its full face value. Having given full faith and credit to every allegation in the indictment, the question before the court is: Does the indictment tell a story which leads the court to believe that there may be a legitimate legal question as to whether interstate trade in malleable iron castings has been unduly or unreasonably restrained as a result of the concerted activities of the defendants and their codefendants, and, if so, does the other evidence submitted overcome such prima facie case?

This case belongs to that class of cases which has come to be known as "trade association cases." It is impossible to read the indictment without realizing that the very heart of the combination described (i. e., that the instrumentality through which the alleged combination was carried out) is the American Malleable Castings Association. Eliminate the association and its activities, and the so-called combination is not complete. The court finds it impossible to examine the plan of the information bureau of the association (Government's Exhibit No. 1) without raising in one's mind a grave question as to the legality of the activities of the association. In this connection certain facts are undisputed, viz. that the defendants are executive managing officers of their respective corporations, which are in turn members of the association; that the asso-

7 F.(2d)—47

ciation through its officer, Belt, conducts an information bureau for the benefit of its members, with which the defendants' corporations periodically deposited the names and addresses of their customers, the lists being amended from time to time; that, when inquiries for quotations were received at the offices of the corporate members, immediate inquiries regarding the probable purchaser were sent by wire in code to the secretary of the association or information bureau, who thereupon wired in reply the information that the probable purchaser was listed as a customer by some other member, giving that member's name and address, and that certain other members were making the same inquiry that the present inquirer was making, if such were the fact; that said customers' names were listed by the members without their consent, and frequently without their knowledge; that the customers did not know of this exchange of information; that there were about ten meetings of the association each year, irregularly attended by defendants, where discussion of market conditions, and various other subjects relating to the industry were had. In addition, the government draws certain deductions from various circumstances, which may or may not be well founded, depending upon a careful consideration of all evidence to be submitted by both sides.

[8] The allegations of the indictment under consideration state a violation of section 1 of the Sherman Anti-Trust Act. Addyston Pipe & Steel Co. v. United States, 175 U. S. 211, 20 S. Ct. 96, 44 L. Ed. 136; Eastern States Retail Lumber Dealers' Association v. United States, 234 U. S. 600, 34 S. Ct. 951, 58 L. Ed. 1490, L. R. A. 1915A, 788; American Column & Lumber Co. v. United States, 257 U. S. 377, 42 S. Ct. 114, 66 L. Ed. 284, 21 A. L. R. 1093; U. S. v. American Linseed Co., 262 U. S. 371, 43 S. Ct. 607, 67 L. Ed. 1035. The question then is whether, upon the evidence of the indictment, the undisputed facts aforesaid, and the contraventions offered by defendants and the government, this court should deny to the United States government the right to have an ultimate decision upon the merits upon the question of whether the activities of the association are legal or not. To deny such right does not avail the defendants, for the indictment would still remain, and they might be brought to trial at any time hereafter.

[9] We have, then, an indictment, which is taken, not as a pleading, but as evi-

dence, and which alleges that these defendants violated the Sherman Act. On the other hand, we have the testimony of defendants and other witnesses, tending to show that there was no violation of the defendants' act, admitting that they were connected with the member foundries, as executive officers, and admitting that Belt was connected with the association at Cleveland, but denying the crucial, controvertible question here in issue; that is, denying that they violated the Sherman Act. It is not the duty of the court to go into the question of who tells the truth, to weigh testimony, or to go into the question of the credibility of witnesses. The question for the court to determine is, "Is there evidence of probable cause?" Judge Thompson has well stated the law as follows: "It never was the intention of the law that the court, to which application is made for removal, should sit in judgment and try the case, hearing the evidence, and passing upon the credibility of the witnesses, and ultimately determine the guilt or innocence of the defendant. That is for the trial court, in which jurisdiction the indictment was found, and I could only refuse application where it appeared that the case is not triable within the district to which it is sought to remove, or that the court is without jurisdiction, or that the testimony wholly failed to establish probable cause." By the last qualification this court understands him to mean that, if we had a state of facts here where, notwithstanding this indictment, there was some other material determinative feature in the case, of which the court could say, "On account of this, this indictment must be brushed aside," then the defendants could not be removed. But suppose that this court should conceive it to be its duty to go into the question as to who is right. Would the court be justified here in saying that one side is right, rather than the other, to the extent of saying that the evidence conclusively shows that this prima facie case made out by the indictment is destroyed? That is the extent to which this court would have to go, that the evidence here conclusively shows that the prima facie case is destroyed.

The question for final determination will be whether this association through its activities violated the Sherman law, whether the defendants as active managers of member companies, through the means of the association, did things that would unreasonably interfere with free competition as it would exist in the absence of such association under the natural laws of competition. The activities of such organizations have been before the Supreme Court in many instances. The authoritative cases, by their popular names, are the Linseed, Hardwood, Cement, and Maple Flooring Cases. The same general principles are announced in each case, but in each particular facts are differentiated. In the most recent of those cases the court again declared that the ultimate decision in each case must rest upon the facts of the case. "The line of distinction is narrow and indistinct. We do not conceive that the members of trade associations become such conspirators merely because they gather and disseminate information, such as is here complained of, bearing on the business in which they are engaged, and make use of it in the management and control of their individual businesses. The unlawfulness of the combination arose in other cases, not from the fact that the defendants had effected a combination to gather and disseminate information, but from the fact that the court inferred from the peculiar circumstances of each case that concerted action had resulted, or would necessarily result, in tending arbitrarily to lessen production or increase prices." U. S. Maple Flooring Mfrs.' Ass'n v. U. S., 45 S. Ct. 578, 69 L. Ed. ——.

[10] Here the grand jury has returned an indictment aimed at the association. The questions raised in defense are those of controverted facts, proper to be considered upon trial. There all the evidence will be submitted for a fair trial, subject to review. Shall this court weigh those facts? Shall this court invite and consider all the evidence to decide whether under the particular facts the defendants are guilty? Shall this court attempt, with meager evidence before it, to decide that this particular trade association was legal, that it is governed by the Maple Flooring Case or the Cement Case, that its activities with all their ramifications in various jurisdictions had no direct tendency unreasonably to interfere with interstate commerce, or that it is illegal, as were the linseed associations and the hardwood association in their activities, or that the acts of the defendants were "smug protestations" and "artful gestures" condemned by Mr. Justice McReynolds in his recent dissenting opinion? The answer to these questions is apparent. The questions are so close, and the rule of individuality so controlling, that the issues can be adjudicated only upon full and complete hearing, and not upon preliminary inquiry. To attempt to enter into such an inquiry and to make such a decision would

be upon the part of this court presumptuous and improper.

It follows that the petition must be allowed, and it is so ordered. The bail will be fixed at the present amount.