**UNITED STATES v. STEIN.**

District Court, E. D. Michigan, S. D.
Jan. 15, 1946.

756

John C. Lehr, U. S. Atty., and John C. Ray, Asst. U. S. Atty., both of Detroit, Mich., for the government.

Fitzgerald, Walker, Conley & Hopping, of Detroit, Mich. (By Louis M. Hopping, of Detroit, Mich.), for Sam Stein.

KOSCINSKI, District Judge.

The defendant, Sam Stein, with several others, was indicted by the Grand Jury in the Northern District of Illinois, Eastern Division, in the May term of the year 1945 on three counts; specifically, the defendant Sam Stein was indicted on the first and second counts with aiding and abetting the making of false entries in the books and records of a co-defendant, The Peerless Distributing Company, Inc. The records in question were required to be kept by the defendants in accordance with the rules and regulations prescribed by the Commissioner of Internal Revenue by and with the approval of the Secretary of Treasury of the United States of America, said records being commonly described as Treasury Department Form 52B. The third count charges a conspiracy to commit the first two offenses.

A certified copy of the indictment was placed in evidence. One Saul Maltz, a wholesale and retail liquor dealer of Chicago, Illinois, who testified before the Grand Jury in the Northern District of Illinois, was placed on the witness stand by the government before the United States Commissioner in the removal proceedings to identify the defendant Sam Stein. This he did.

Saul Maltz described himself as a wholesale and retail liquor dealer at Chicago. He stated that in the summer of 1943 he testified before the Grand Jury for the Northern District of Illinois, Eastern Division, and that he also testified before the Grand Jury there in 1945 on a re-presentation of the same case. At the hearing before the Commissioner, Maltz identified Sam Stein as the person with whom he had dealings in 1943. In the course of his testimony before the Commissioner he testified as follows:

"Q. And under what circumstances did you have any business dealings with the defendant Sam Stein? A. Well, he was sent to my store to discuss about whiskey that was going to be bottled, and we discussed regarding the labels and the proof of the whiskey and storaging and handling and other miscellaneous details, how to handle the merchandise * * *. He asked me when approximately the whiskey would be up from Kentucky, and I told him it would take a little time. Then we discussed what label the whiskey was going to be bottled under, and the proof of the whiskey, and we discussed the warehouse charges, and approximately how many cases of whiskey we would get out of a barrel by bottling it in fifths. And that was all the conversation we had there."

The witness also stated: "Mr. Licavoli called me on the phone and told me that he was sending Sam Stein over to my place to discuss with me the handling of the whiskey that was going to be bottled. Licavoli was the party who had the whiskey that was supposed to be bottled."

The defendant now challenges the regularity of the Grand Jury proceedings in indicting the defendant in 1945.

When questioned before the Commissioner on September 13, 1945, the witness Maltz testified as follows:

"Q. You want us to understand, Mr. Maltz, that when you were called before a Grand Jury some time this year that you were merely asked whether your testimony would be the same this year as it was in 1943? A. That was the exact questions that I was asked. They asked me my name, my place of business, and if I remembered being up here in the Grand Jury room in 1943, and asked me whether the testimony that I gave them would be the same now. I said yes, I don't see any change in it. That was all that I was asked there. The only thing that they did to me, they showed me the pictures of Pete Licavoli, if I recognized them, and showed me the pictures of Margolis, and pictures of Sam Stein, and I recognized all of them pictures. And they asked me whether that is the same fellows that were—that my testimony called for in 1943, and I said 'Yes.'"

Other than that, the witness testified he had nothing to do with the Peerless Distributing Company of Illinois, nor did he have any knowledge of the entries made on Form 52B described in the indictment.

On the adjourned date of the removal proceedings before Commissioner Hurd on October 10, 1945, Maltz was recalled to testify. He stated that he appeared before the Grand Jury in Chicago on May 22, 1945, that he was asked then certain questions with regard to one Sam Stein and as to having negotiations with Stein and was asked to identify a photograph of Sam Stein. He again identified Sam Stein as the person as to whom he testified on May 22, 1945, before the Grand Jury in Chicago and whose photograph he had identified at that time. He also identified Sam Stein in the courtroom before the Commissioner as being the same man with reference to whom he testified before the Grand Jury in 1945. He also stated that Pete Licavoli (one of the defendants) told him he was sending over Sam Stein to see the witness Maltz to discuss the transaction; that the call came from the Blackstone Hotel from Licavoli. This is one of the overt acts alleged in the conspiracy count of the indictment before the court. The witness denied having a conversation with Sam Stein or Pete Licavoli at the Blackstone Hotel. Again, he admitted having a conversation with Pete Licavoli at the Blackstone Hotel regarding this whiskey transaction.

At the adjourned examination on October 10, 1945, Mr. Walker, attorney for Sam Stein, asked the witness Maltz:

"Q. Did you testify fully and completely before the Grand Jury in 1945? A. I did.

"Q. So that what you testified here before that, all you did was say your testimony would be the same, that was an error? A. That was strictly an error."

The defendant contests removal on two grounds:

1. That he is not the same Sam Stein regarding whom the witness, Saul Maltz, testified before the Grand Jury in Chicago in 1943 and 1945; and

2. That there is no probable cause that defendant committed the crime charged in the indictment.

■ There can be no serious doubt as to the identity of the defendant Sam Stein. The testimony taken before the Commis-

sioner was conclusive that Maltz on two occasions before the Grand Jury identified pictures of Sam Stein and testified on both occasions concerning business dealings with him. Maltz on two occasions, to wit, September 13, 1945, and October 10, 1945, also positively identified Sam Stein in the courtroom of Commissioner Hurd in Detroit.

Concerning the question of probable cause, the law seems to be settled now that the indictment is only prima facie evidence of probable cause and that the defendant has the right to introduce evidence. This he did not do.

A further objection is made by defendant's counsel to the removal on the ground that witness Saul Maltz, in his appearance before the Grand Jury in 1945, did not testify as completely and fully as to his dealings with Sam Stein as he did on his appearance before the Grand Jury in 1943 and that on his appearance in 1945 before the Grand Jury he was simply asked whether his testimony would be the same as it was in 1943 and that he answered that it would be. In examining the transcript of his testimony taken before Commissioner Hurd, however, it appears (pp. 30, 31) that he testified he was asked by defendant's counsel whether he testified fully and completely before the Grand Jury in 1945 and that he answered he did and that his former testimony was an error.

Vigorous objection is made to the removal for the reason that the witness Maltz in his testimony before Commissioner Hurd did not connect Sam Stein with any offenses charged in the indictment. As I look upon the record of these proceedings it appears that the witness, Saul Maltz, was here to testify as to the identity of Sam Stein. No claim was made by defendant nor any proof offered that testimony of witness Maltz was the only evidence the government has to connect the defendant, Sam Stein, with the offenses charged in the indictment.

■ An application for removal of an accused under Revised Statutes, Section 1014, 18 U.S.C.A. § 591, authorizing the removal for trial of an accused indicted in one district and found in another, should be granted unless it appears that the offense charged was not committed or was not triable in the district to which the removal is sought, or that defendant was not the party charged, or that the indictment was invalid, or that the testimony wholly failed to establish probable cause.

758

■ For the purpose of removing accused to another district for trial, the indictment constitutes prima facie evidence of probable cause. To remove accused to another district for trial, the existence of probable cause must be determined by the court to which the application is made, after considering all the evidence.

■ On application for removal of accused to another district for trial if the validity of the indictment is open to reasonable doubt, that doubt is to be resolved by the court which found the indictment.

■ It appears to the court that the defendant's identity has been clearly established. The issue at this time is not whether the accused is guilty but whether there is probable cause to bring him to trial on the indictment to determine his guilt. United States ex rel. Kassin v. Mulligan, 295 U.S. 396, 55 S.Ct. 781, 79 L.Ed. 1501.

In the last mentioned case the Supreme Court, after citing the cases of Beavers v. Haubert, 198 U.S. 77, 90, 25 S.Ct. 573, 49 L.Ed. 950, Price v. Henkel, 216 U.S. 488, 493, 30 S.Ct. 257, 54 L.Ed. 581, and South Carolina v. Bailey, 289 U.S. 412, 421, 53 S. Ct. 667, 77 L.Ed. 1292, said [295 U.S. 396, 55 S.Ct. 783]:·

"The indictment is not conclusive, for under section 1014 the petitioner has the right to introduce evidence in opposition to the showing made against him. Tinsley v. Treat, supra, 205 U.S. 20, 32, 27 S.Ct. 430, 51 L. Ed. 689. But as the order of removal adjudges nothing affecting the merits of the case and amounts to no more than a finding that the accused may be brought to trial, the Commissioner is without power to rule on disputed questions of law whether they relate to the sufficiency of the indictment or the validity of the statute on which the charge is based. Henry v. Henkel, 235 U.S. 219, 229, 35 S.Ct. 54, 59 L.Ed. 203; Stallings v. Splain, 253 U.S. 339, 344, 345, 40 S.Ct. 537, 64 L.Ed. 940; Morse v. United States, 267 U.S. 80, 83, 45 S.Ct. 209, 69 L.Ed. 522. And for like reasons he may not decide controverted or doubtful issues of fact. Rodman v. Pothier, 264 U.S. 399, 402, 44 S.Ct. 360, 68 L.Ed. 759. In view of the delays and obstructions that it is possible for persons accused to obtain and interpose by misuse of the right to be heard before removal (cf. Salinger v. Loisel, 265 U.S. 224, 238, 44 S.Ct. 519, 68 L.Ed. 989), section 1014 is to be construed quite favorably to the government's applications. Benson v. Henkel, supra, 198 U.S. 1,

15, 25 S.Ct. 569, 49 L.Ed. 919. Haas v. Henkel, supra, 216 U.S. 462, 475, 30 S.Ct. 249, 54 L.Ed. 569, 17 Ann.Cas. 1112."

The defendant in this case did not take the witness stand nor did he call any other witnesses in his behalf before the Commissioner.

■ The indictment creates a presumption of probable cause, which remained throughout the proceeding, and only a strong showing can overcome this presumption. Only in exceptional cases in which the defendant's affirmative proof is overwhelming, will removal be denied if he has been indicted in the district to which removal is sought. ·In this instance defendant has not offered any rebuttal. He has not overcome the presumption of probable cause.

An order will therefore be entered for removal of Sam Stein for trial to the Northern District of Illinois, Eastern Division, in conformity with this memorandum.