## MURREY v. UNITED STATES.
### No. 12572.

Circuit Court of Appeals, Eighth Circuit.
Oct. 12, 1943.

See, also, 134 F.2d 956.

Bruce H. Shaw, of Fort Smith, Ark. (appointed by the Court), for appellant.

Clinton R. Barry, U. S. Atty., and Philip G. Alston, Asst. U. S. Atty., both of Fort Smith, Ark., for appellee.

Before SANBORN and RIDDICK, Circuit Judges, and DELEHANT, District Judge.

SANBORN, Circuit Judge.

The appellant, an inmate of the United States Penitentiary at Alcatraz Island, California, on September 19, 1942, filed in the District Court of the United States for the Western District of Arkansas, a motion to vacate the sentences imposed upon him on June 12, 1937, by that court upon his plea of guilty to an indictment in criminal cause No. 3803. The first count of the indictment charged the appellant and Gus Harrison with having transported B. Dale Calvert in interstate commerce after they had kidnapped him, in violation of § 408a, 18 U.S.C.A.; and the second count charged them with having transported in interstate commerce an automobile stolen from Calvert, in violation of § 408, 18 U.S.C.A.

The grounds of the appellant's motion are: (1) That at the time he entered his plea of guilty he was not represented by counsel, that he did not know and was not advised that he had the right to be represented by counsel, and that he did not competently or intelligently waive his right to the assistance of counsel; (2) that the Assistant United States Attorney in charge of the case would not permit the appellant to communicate with relatives so that he might prepare to defend himself; (3) that this Assistant United States Attorney, by misrepresentation and coercion, induced the appellant to enter a plea of guilty, which was not voluntarily entered; and (4) that the appellant was not guilty of the charges contained in the indictment.

The District Court allowed the appellant to prosecute his motion in forma pauperis, appointed counsel for him, and granted him a hearing upon the merits, although it denied his application for a writ of habeas corpus ad testificandum. After the hearing, the court made findings of fact and conclusions of law, resolving all issues in favor of the Government, and entered a judgment denying the appellant's motion. This appeal is from the judgment.

The appellant asserts: (1) That the court erred in denying a writ of habeas corpus ad testificandum. (2) That it was error to refuse to permit B. Dale Calvert, at the hearing on the motion, to testify that he could not identify the appellant as one of the persons who kidnapped him. (3) That the findings of fact and conclusions of law made by the District Court are not sustained by the evidence.

The indictment in criminal cause No. 3803 was returned March 4, 1937. At that time the appellant and his codefendant, Harrison, were in the Sebastian County Jail in Fort Smith, Arkansas. The appellant was being held by the State of Arkansas for robbery. On March 8, 1937, he was tried, at Fort Smith, upon the robbery charge in the Circuit Court of Sebastian County, upon his plea of not guilty. He was represented by counsel. The jury returned a verdict of guilty, and recommended imprisonment for a term of seven years. While awaiting sentence and on the night of March 14 or in the early morning of March 15, 1937, the appellant and Bruce (Tex) Fowler escaped from the County Jail. They were recaptured and brought back the night of March 15, 1937. Harrison had on March 15, 1937, entered a plea of guilty to the indictment in criminal cause No. 3803 and was sentenced to a five-year term of imprisonment upon each count, the sentences to run consecutively. Following the appellant's recapture and on March 16, 1937, he was sentenced by the State court for the robbery of which he had been convicted, his sentence being a term of imprisonment for seven years, at hard labor, in the Arkansas Penitentiary. On that same day the appellant and Bruce Fowler were interviewed by a Special Agent of the Federal Bureau of Investigation. Shortly thereafter the appellant was taken to the Arkansas Penitentiary.

On June 3, 1937, the appellant and Fowler were indicted in the District Court of the United States for the Western District of Arkansas. The first count of the indictment charged them with having transported in interstate commerce Ely C. Whitson, a person kidnapped by them, and the second count charged them with having transported in interstate commerce an automobile stolen from him. This cause was criminal cause No. 3841. It appeared from a statement given to the Special Agent of the Federal Bureau of Investigation by the appellant and Fowler on March 16, 1937, that, after their escape from the County Jail at Fort Smith, they forcibly took Whit-

son and his car, in Arkansas, and drove into Oklahoma.

On June 8, 1937, the court below issued a writ of habeas corpus ad prosequendum, directing the Warden of the Arkansas Penitentiary to produce the appellant before that court for arraignment on June 12, 1937. The appellant was produced on that day, was arraigned upon both indictments pending against him, entered pleas of guilty to both at the same time and under the same circumstances, and was sentenced.

In cause No. 3803, relating to the abduction of Calvert and his car, the sentence imposed under the first count of the indictment was a term of imprisonment for 15 years, to commence upon the appellant's surrender by the Arkansas Penitentiary, and the sentence imposed under the second count was a term of imprisonment for 2½ years, to begin at the expiration of the sentence imposed under the first count of the indictment in cause No. 3841. In cause No. 3841 (relating to the abduction of Whitson and his car), the sentence under the first count of the indictment was a term of imprisonment for 10 years, to begin at the end of the term of imprisonment for 15 years imposed under the first count of the indictment in cause No. 3803. The sentence under the second count of the indictment in cause No. 3841 was a term of imprisonment for 2½ years, "to run concurrently with the two and one-half years term of imprisonment" imposed under the second count of the indictment in cause No. 3803. Thus the aggregate term of imprisonment under both indictments was 27½ years.

The State of Arkansas surrendered the appellant to the United States, and on July 21, 1937, he was taken to the United States Penitentiary at Leavenworth, and was later transferred to the Penitentiary at Alcatraz. In 1939 he petitioned the District Court of the United States for the Northern District of California for release on habeas corpus, on the same grounds that are advanced in his present motion. A writ was issued, returnable before a United States Commissioner as special master, who held a hearing, at which the appellant testified and the Government filed depositions. A transcript of the testimony adduced was, by agreement of the parties, introduced in evidence at the hearing of the appellant's present motion. In his report, the special master found all the issues in favor of the Government, and recommended that the appellant be denied a release. On January 9, 1940, the United States District Court for the Northern District of California affirmed the report of the master, and dismissed the proceeding. No appeal was perfected.

On July 3, 1941, the appellant filed in the court below an application for leave to file and prosecute in forma pauperis a motion in all substantial respects similar to the motion now under consideration. The court on July 5, 1941, without a hearing, denied the application. The appellant petitioned this Court for the allowance of an appeal in forma pauperis, which was granted. The appeal, however, was ultimately dismissed for the reason that the District Court had certified that it was not taken in good faith. Murrey v. United States, 8 Cir., 130 F.2d 20. Thereafter the appellant filed the motion now under consideration, which the District Court heard and considered upon its merits. That court has certified that the present appeal to this Court has been taken in good faith.

We shall review the case upon its merits, although we are of the opinion that the judgments and sentences which the appellant seeks to have set aside became final at the expiration of the term at which they were entered, and that the District Court was without jurisdiction to vacate them years after the expiration of that term. Gilmore v. United States, 8 Cir., 131 F.2d 873; McDonald v. United States, 8 Cir., 136 F.2d 482. We realize that the question whether the rule that, "In the absence of statute providing otherwise, the general principle obtains that a court cannot set aside or alter its final judgment after the expiration of the term at which it was entered, unless the proceeding for that purpose was begun during that term," United States v. Mayer, 235 U.S. 55, 67, 35 S.Ct. 16, 19, 59 L.Ed. 129, applies to a motion such as that in suit is presently not free from doubt. See Steffler v. United States, 319 U.S. 38, 63 S.Ct. 948, 87 L.Ed. 1197.

The first question for consideration is whether it was error to deny the appellant's application for a writ of habeas corpus ad testificandum. The hearing upon the appellant's motion was not a criminal trial. The motion called for nothing more than a thorough judicial investigation to ascertain whether there had been a denial of constitutional right. There were obvious reasons why it was undesirable that the appellant should be transported from

Alcatraz to Fort Smith, aside from the distance and expense involved. There was nothing in his record to give assurance that he would necessarily reach his destination. Moreover, his verified motion stated his account of the circumstances surrounding his plea of guilty, and was supplemented by the transcript of the testimony he had given in 1939 in the habeas corpus proceedings in the United States District Court for the Northern District of California. The issuance of a writ of habeas corpus ad testificandum lies in the exercise of a sound judicial discretion. In re Thaw, 3 Cir., 166 F. 71, 75, Ann.Cas.1915D, 1025; Neufield v. United States, 73 App.D.C. 174, 118 F.2d 375, 385; Gilmore v. United States, 10 Cir., 129 F.2d 199, 202; Am.Juris., Vol. 25, p. 146. The District Court was guilty of no abuse of discretion in denying the writ.

The appellant, at the hearing of his motion, produced B. Dale Calvert as a witness, and offered to prove by him that he had been, and was, unable to identify the appellant as one of those who had kidnapped and transported him in interstate commerce. This evidence was excluded upon objection by the Government. The issue of the guilt or innocence of the appellant was not for determination in the proceeding. As the District Court pointed out, the only question presented was whether the appellant had been denied any of his constitutional rights at the time he entered his plea of guilty.

The only theory upon which the contention of the appellant that the findings of fact of the District Court were not supported by substantial evidence could be sustained would be that the court was required to believe the appellant's assertions and his evidence and to disbelieve the evidence of the Government. We have recently ruled that, even if the evidence of one in the situation of the appellant is uncontradicted, the trier of the facts is not bound to believe it. Ammons v. King, Warden, 8 Cir., 136 F.2d 318.

Taking that view of the appellant's evidence which is most favorable to him, his account of the circumstances surrounding the entry of his pleas of guilty in the Federal court on June 12, 1937, is substantially as follows: He was on that day confined at the Arkansas Penitentiary. He did not then know that he had been indicted in the Federal court, although he had heard "through a roundabout way" that he had been. He was, on the morning of that day, placed in a truck and heard the Warden of the Penitentiary tell "the Captain" [evidently the Transfer Warden] that they wanted the appellant back before dark. The appellant did not know where he was being taken. He was taken to the Federal Building in Fort Smith, Arkansas. He was in the hall of the building about five minutes. He talked to a prosecuting attorney, who he thinks was Mr. Duke Frederick [then an Assistant United States Attorney for the Western District of Arkansas]. Frederick said to the appellant that he had some charges against him; the appellant said "Yes"; and Frederick said: "Well kidnaping, if you plead guilty to the kidnaping charge, there is no way the death penalty can be put on you, but if you fight the case and the jury recommend the death penalty, why, the death penalty can be put on." The appellant told Frederick that he would like to notify his mother or somebody; that he did not have anyone there to help him; that he was not ready for trial. "They said, Well they couldn't do nothing about that, I would have to go ahead and have a trial." The appellant "figured" that he could "beat the case" if he had counsel, but he did not have any money and did not know that he could procure the assistance of counsel without money. He was not advised by the court or by the United States Attorney, or by anyone, that he had a right to the assistance of counsel. He was taken into the courtroom, and, without the assistance of counsel, he entered pleas of guilty to the charges pending against him, was sentenced, and was then taken back to the Arkansas Penitentiary. He had always denied having any connection with or knowing anything about the Calvert kidnapping, but had told "them" that he would plead guilty to the "Whitson case". He really did not know what he was pleading to. He would not have entered a plea "if they let me put my case on, so I could have got someone to help me." He did not ask for an attorney and thought he could not have one unless he had money. He entered the pleas of guilty because he did not know any better.

According to the appellant's own testimony, he has had an unfortunate career, commencing apparently when he was a child. In 1925, when he was in about the fourth grade in school and apparently

about thirteen years old, he was sent to the Arkansas Industrial School, evidently a correctional institution, for about sixteen months. He got out and went to Oklahoma and was caught in a store where he and another boy were sleeping. He was then sent to the Oklahoma Industrial School for about two years. He later served an indeterminate sentence for burglary at Pine Bluff, Arkansas. He was there about five months He served a four-year sentence for burglary in the penitentiary at Jefferson City, Missouri. He was in jail a day or two at Shreveport, Louisiana, and a few days at Muskogee, Oklahoma. His criminal record is only important, in the consideration of his present motion, as some indication that at the time he entered his pleas on June 12, 1937, he was not an inexperienced boy unfamiliar with courts and court procedure, and for such bearing as his conviction of felonies has upon his credibility as a witness. A person with a criminal record has, of course, the same constitutional rights as any other person, and, no doubt, on occasion has far greater need of them.

The evidence which the Government introduced, at the hearing of the motion, tended to disprove the testimony of the appellant. Clinton R. Barry, United States District Attorney for the Western District of Arkansas, testified that while the appellant was in the County Jail at Fort Smith, Barry had caused the appellant to be interviewed, and was informed that he desired to plead guilty in the Federal court; that Barry directed that the appellant put his desire in writing, since he was then under a long sentence to the Arkansas Penitentiary and could be arraigned in the Federal court only by consent of the Governor of Arkansas, and that Barry would not request the Governor to deliver the appellant into the custody of the United States unless he agreed in writing to enter a plea of guilty in the Federal court; that L. W. Bryan, a Special Agent of the Federal Bureau of Investigation, thereafter showed to Barry statements in writing, purporting to have been signed by the appellant, and one of them purporting to have been signed by Fowler also, in which the appellant and Fowler stated that they desired to plead guilty to the charges then pending against them in the Federal court. Barry testified that he thereupon requested the Governor of Arkansas to relinquish custody of the appellant to the United States, and that was done, and the appellant was brought to Fort Smith and entered his pleas. Barry also testified that he was present in court when the pleas were entered; that the indictments were read to the appellant, and he entered his plea to each count of each indictment; that he (Barry) is unable to recall in this particular case that the court offered to appoint counsel to represent the appellant, "but it has been the custom of the court, which has been strictly followed and was strictly followed at the time the defendant Murrey pleaded guilty, for the court to explain to each defendant before his arraignment that he is entitled to counsel before entering his plea and offering to appoint counsel to represent each defendant before calling upon such defendant for a plea, and I do not remember a single instance in which the court has failed to make this offer to any defendant who was not already represented by counsel."

Lloyd W. Bryan, the Special Agent of the Federal Bureau of Investigation who interviewed the appellant and Fowler in the County Jail at Fort Smith, Arkansas, testified: That, under the rules of the jail, he was required to interview them separately. That on March 16, 1937, Fowler, in his own handwriting, wrote the following message to the appellant (relative to cause No. 3841, the Whitson case): "Say Peck what ever you want to do about this is O.K. with me if you want to write a note to the Pros. Att. and tell him you will plead guilty I will do the same." That Bryan took this message to the appellant, who wrote on it: "Pal its O.K. by me to pleed guilty. Mr. Bryn will try to talk to us both at the same time." That on the same day the appellant gave to Bryan a written statement, in the appellant's own handwriting, reading as follows: "Mr. Barry I Harry Murrey will pleed guilty to taking Dale Calvert for a ride if you all will try me in Fed. cort. I want to get my record clean once more so I can go straight. Harry Murrey." Bryan also testified that, while the appellant had declined to give him a statement relative to the kidnapping of Calvert, the appellant said that he would plead guilty to the charges if he would be sent to a federal penitentiary, as he did not want to go to the Arkansas State Penitentiary; that the appellant was told that no promises could be made, and he finally said: "I'll tell you or the federal attorney that I took him [Calvert] for a 'ride' if they let me plead guilty in federal court, but I won't sign any state-

ment"; that the appellant wanted to know if he could get the case tried and finished so a detainer would not be filed against him when he went to the Arkansas State Penitentiary; that he was told that that was a matter for the United States Attorney, and was asked if he wanted to write Mr. Barry, the United States Attorney, about the matter, and said that he did.

Judge Heartsill Ragon, who accepted the appellant's pleas of guilty, had died long prior to the hearing of the appellant's motion. Mr. Duke Frederick, the Assistant United States Attorney, had also died, but his deposition is included in the transcript of the hearing in the habeas corpus proceeding, which is in evidence. His testimony was that he talked to the appellant on June 12, 1937, prior to the time he entered his pleas; that it was apparent to Frederick that the appellant understood the charges in the two indictments; that the appellant stated that it was his desire to enter a plea of guilty to both counts of the indictment in each case; that he was taken into the courtroom before the Judge, where the indictments were read to him and he entered his plea of guilty to both counts of each indictment; that at no time did the appellant indicate any desire to be represented by counsel or state that he was not ready for trial; that the appellant was not told that he would have "to go ahead and have a trial anyway"; that the death penalty was not referred to; that Frederick, before the appellant entered his plea, explained the charges to him and they were read to him in open court, and that no inducements were offered for pleas of guilty; that the evidence against the appellant in both cases was considered "ample and overwhelming", and it was immaterial to Frederick and the United States Attorney whether the appellant entered a plea of guilty or a plea of not guilty. Mr. Frederick also testified that it was the practice of Judge Ragon to decline to accept a plea on a felony charge from a defendant until the Judge had ascertained whether or not the defendant desired counsel, and that it was the Judge's custom to appoint counsel for defendants in criminal cases who were not represented by counsel and who desired counsel, and that it was his (Frederick's) belief that the appellant, upon his arraignment, stated to the Judge that he did not desire counsel to represent him.

John J. Chenault, who was Transfer Warden at the Arkansas Penitentiary in 1937 and who brought the appellant to the Federal Building in Fort Smith on June 12, 1937, testified that the purpose of bringing him, was, "He wanted to plead guilty to a Federal charge at the time we left." Chenault further testified that, the night before, the Superintendent of the State Penitentiary had told him "to bring this boy before Judge Ragon, that he wanted to plead guilty to a Federal charge"; that when they arrived at the Federal Building, court was in session and a case on trial and they had to wait a "little bit" until the case was finished; that then the appellant "was called up—Judge Ragon called him up and asked him if he had counsel and he said 'no' he didn't want counsel, that he wanted to plead guilty and get it over with"; and that he then entered pleas of guilty and was sentenced.

■ The appellant stresses the fact that the Clerk's records do not show any waiver by the appellant of his right to the assistance of counsel; but there is no evidence that it was customary at that time to note such waivers on the records. The significance, if any, of the lack of such a recital was for the District Court to appraise.

■ The findings of fact of the District Court are abundantly supported by the evidence, and its conclusions of law are fully sustained. Its judgment is an adjudication that the sentences, which the appellant asserts are void, are in fact valid and binding.

Counsel appointed by the court below and counsel appointed by this Court have, without compensation, ably represented the appellant. It is largely on that account and to demonstrate that the appellant's claim of the denial of his constitutional rights has been given due consideration by the District Court and by this Court that we have discussed the case at greater length than is perhaps justified. If the appellant wishes to apply to the Supreme Court of the United States for certiorari, he may do so without the payment of Clerk's fees or costs in this Court.

The judgment appealed from is affirmed.