## BYRD v. PESCOR.

### No. 13547.

Circuit Court of Appeals, Eighth Circuit.

Oct. 7, 1947.

Rehearing Denied Nov. 4, 1947.

Albert Thomson, of Kansas City, Mo., for appellant.

Sam M. Wear, U. S. Atty., and Earl A. Grimes, Ass't. U. S. Atty., both of Kansas City, Mo., for appellee.

Before SANBORN, THOMAS, and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal in forma pauperis from an order dismissing the petition of Slayton C. Byrd for a writ of habeas corpus.

The petitioner (appellant) was, by an indictment on May 9, 1945, in the United States District Court for the Eastern District of Oklahoma, charged with having committed a felonious assault at the United States Veterans Facility, near Muskogee, Oklahoma, on March 16, 1945. On May 11, 1945, the petitioner, through his then counsel, entered a plea of not guilty, upon the ground of insanity. On June 21, 1945, the court found petitioner to be insane, and ordered him committed to the custody of the Attorney General for confinement in St. Elizabeth's Hospital, Washington, D. C., for the period of his mental incompetency, and further ordered that the indictment be continued until "said defendant [petitioner] is restored to competency or the further order of this court." Petitioner was in St. Elizabeth's Hospital from July 14, 1945, to October 2, 1945. He apparently left the hospital without permission on the latter date, went to his mother's home in Georgia, and was thereafter removed to Muskogee, Oklahoma, for trial upon the indictment of May 9, 1945. He was tried and convicted by a jury on February 18, 1946. On February 20, 1946, he moved for a new trial, stating as one of the grounds in his motion "that prior to the trial defendant had been adjudged by the State Court of Georgia as insane and as a lunatic; and * * * that the trial court had on June 21, 1945, found defendant to be insane as of that date; and * * * that no evidence was introduced to show a difference in the mental condition of defendant on March 16, 1945, the date of the offense set forth in the indictment * * * and the 21st day of June 1945." On March 1, 1946, the court denied petitioner's motion for a new trial and sentenced him to the custody of the Attorney General for imprisonment for the period of five years. Petitioner was first taken to the United States Penitentiary at Leavenworth, and later transferred to the United States Medical Center for Federal Prisoners at Springfield, Missouri.

In his petition for a writ of habeas corpus, the petitioner asserted that the United States District Court for the Eastern District of Oklahoma was without jurisdiction to enter judgment against him, because he was insane at the time of the commission of the offense with which he was charged, at the time of his trial and conviction, and at the time he was sentenced. The respondent (appellee) denied petitioner's allegations of insanity.

The hearing upon the petition and response was before the Honorable Albert L. Reeves, one of the judges of the United States District Court for the Western District of Missouri, on October 10, 1946. The petitioner was present in person and was represented by counsel. During the opening statement of petitioner's counsel, the following colloquy took place between him and the judge:

"The Court: Was there a jury and conviction and all that, does the record show?

"Mr. Davidson: Yes, sir, there was a trial by jury.

"The Court: A plea of insanity and all?

"Mr. Davidson: Well, sir, I am not clear on that at all. I wrote for the docket entries from that place and they don't show that there was another plea of insanity made, but we could not get a transcript of the case there because of the cost. This man didn't have the money. I wrote the Clerk and asked him for the instructions the Court gave. They were oral instructions and he referred me to the court stenographer who took them down, the court reporter, and we did not have the funds to get them. So I can't tell the Court what did or did not occur at that trial as far as the plea of insanity, the question of whether insanity was gone into. I don't say that it wasn't gone into and I don't say that it was because I haven't sufficient information and I haven't been able to secure it."

The petitioner introduced evidence to show that he was adjudged to be of unsound mind by the McDuffie Court of Or-

dinary, of McDuffie County, Georgia, on August 28, 1935, and was committed to the Milledgeville State Hospital; that he was first admitted to that institution on September 16, 1935, was furloughed November 16, 1935, readmitted March 11, 1942, furloughed April 8, 1942, admitted again January 12, 1943, "eloped" May 30, 1944, and discharged upon the records of the hospital "at the expiration of the furlough period, May 30, 1945"; that upon the two first admissions of petitioner to the hospital, the hospital staff thought him to be "without psychosis, but later he was diagnosed psychosis with psychopathic personality"; that on his second admission, March 11, 1942, he was found to have active tuberculosis, and this disease was present on his last admission (January 12, 1943); that at that time some of the staff thought he was "a case of paranoid dementia praecox, but the majority seemed to think more of psychosis with psychopathic personality"; that the Habersham Court of Ordinary, of Habersham County, Georgia, on January 12, 1943, adjudged petitioner insane and an unfit person to be at large, and committed him to the Milledgeville State Hospital; that the Veterans' Administration on November 16, 1945, notified petitioner's mother that he had been determined to be incompetent; and that on June 21, 1945, the United States District Court had found petitioner to be insane and had committed him to St. Elizabeth's Hospital.

There was also introduced on behalf of petitioner a letter from Dr. F. M. Adams, Medical Superintendent of Eastern Oklahoma Hospital, dated July 11, 1946, reading as follows:

"Vinita, Oklahoma
11 July 1946

Mr. Slayton C. Byrd
Box No. PMB 5604—H
Springfield, Missouri

My Dear Mr. Byrd:

This will acknowledge receipt of your letter of recent date. In reply will say that I do not have the record of my testimony that I gave in Federal Court, at the time of your trial.

I testified that I felt that you were suffering from a paranoid condition, and I trust this information will be of some help to you.

With kindest personal regards and best wishes, I am

Yours very truly
(Signed) F. M. Adams, M. D.
Medical Superintendent."

The petitioner testified at the hearing that he had an advanced case of tuberculosis involving both lungs; that he would not live very long; that he does not remember that he had any hearing in Oklahoma or that he was tried in the Federal Court at Muskogee, Oklahoma, or that he was ever in Oklahoma or in the St. Elizabeth's Hospital in Washington, D. C., or that he received the letter from Dr. F. M. Adams which his counsel had introduced in evidence.

The respondent produced evidence of the proceedings had in the United States District Court for the Eastern District of Oklahoma, to which reference has been made. All of these proceedings were before the same judge, namely, the Honorable Eugene Rice, of Muskogee, Oklahoma. The respondent showed that on February 1, 1946, prior to the trial of petitioner, Judge Rice had entered an order directing that certain witnesses—two of them doctors— be subpoenaed on behalf of the petitioner, at the expense of the Government, and that the order contained the following recital: "It further appearing to the court that said defendant has heretofore been declared insane and that his defense will be that of insanity at the time the offense stated in the indictment was alleged to have been committed, * * *." The respondent also introduced an affidavit of Dr. E. D. Griffin, reading as follows: "I, the undersigned, member of the medical staff of Saint Elizabeths Hospital, do solemnly swear that I was acquainted with Slayton C. Byrd who was a patient under treatment in St. Elizabeths Hospital from July 14, 1945 to October 2, 1945 and that, in my opinion, said Slayton C. Byrd was suffering from Psychopathic Personality but to my personal knowledge and observation failed to show evidence of a psychosis, and hence he was a person of sound mind during the

period when I had personal knowledge of his case (July 14, 1945 to August 21, 1945)."

Judge Reeves concluded (1) that the verdict of the jury in the trial of petitioner before Judge Rice settled the issue of petitioner's alleged insanity at the time of the commission of the offense charged in the indictment, and (2) that "the question of a prisoner's insanity at the time of conviction and sentence should have been raised by direct appeal and could not be raised by collateral attack as in habeas corpus."

█ The conclusion that petitioner's conviction amounted to an adjudication that he was sane on March 16, 1945, the day the assault charged in the indictment was committed, is, we think, unassailable. Obviously the petitioner was not entitled to have retried in a habeas corpus proceeding the question of his alleged insanity at the time of the commission of the offense. Were it not for the fact that on June 21, 1945, Judge Rice had determined that the petitioner was insane, the verdict of the jury finding that he was sane at the time the assault was committed would, no doubt, have created the presumption that he continued to be sane thereafter. In view of the adjudication of insanity entered by Judge Rice on June 21, 1945, the petitioner, at the time of his trial, conviction and sentence was presumptively insane. Ashley v. Pescor, 8 Cir., 147 F.2d 318, 321.

There was nothing in the evidence adduced at the hearing before Judge Reeves to show that Judge Rice had affirmatively determined that the petitioner was sane at the time he was tried or at the time he was sentenced. That Judge Rice was convinced that the petitioner at those times was competent and responsible is apparent. Trial Judges do not consciously treat as criminals those who are of such unsound mind that they cannot be held responsible for what they do and are unable to defend themselves upon a trial. Had the respondent produced a complete transcript of the testimony taken upon the trial of the petitioner and of all the proceedings had before Judge Rice, there would probably have been no uncertainty about the question of his jurisdiction to impose judgment upon petitioner.

█ Whether one in the situation of the petitioner, who asserts that he was insane when tried, convicted and sentenced, may collaterally attack, by habeas corpus, the judgment under which he is in custody, is not free from doubt. This Court, however, has ruled that he may do so. Ashley v. Pescor, supra, 8 Cir., 147 F.2d 318, 320, decided January 8, 1945. The rule formerly was, as Judge Reeves states in his memorandum opinion, that a judgment of conviction is not subject to collateral attack on habeas corpus on the ground of the insanity of the defendant at the time of his trial and sentence. Fenton v. Aderhold, 5 Cir., 44 F.2d 787; Whitney v. Zerbst, 10 Cir., 62 F.2d 970; Hall v. Johnston, 9 Cir., 86 F.2d 820. Judge Reeves refers to the opinion of Judge McCord in Srygley v. Sanford, 5 Cir., 148 F.2d 264, 265, in which it is stated: "It was not suggested or even intimated at the hearing when defendant's probation was revoked that he was of unsound mind. The law does not warrant the making of a collateral attack by way of habeas corpus, but this question should have been raised by direct appeal," (citing cases.) Judge McCord, nevertheless, goes on to say: "However, we are not willing to rest our decision on the ground that the question of insanity may not be raised by collateral attack * * *"; and he then points out that the court which held the hearing on the petition for the writ of habeas corpus had found, upon competent evidence, that the petitioner in that case was not insane when his probation was revoked.

The Circuit Court of Appeals of the Tenth Circuit, in Frame v. Hudspeth, 109 F.2d 356, 359, dealt with the same problem with which we are confronted. The petitioner in that case had been adjudged insane on December 23, 1935, and committed to a hospital, from which he escaped on January 26, 1936. He was not discharged as restored to competency on the records of the hospital until January 26, 1938. Prior to that date he had committed offenses for which he was indicted and to which he pleaded guilty. In his petition for a writ of habeas corpus he asserted, in effect, that he was insane when he entered

his pleas. The court which heard his petition specifically found that "petitioner voluntarily, freely, intelligently, competently, and understandingly entered his plea of guilty to the indictments." The Circuit Court of Appeals ruled that this finding was supported by competent evidence and was adequate to sustain the denial of the writ. On petition for rehearing, Judge Phillips dissented. He referred to the familiar rule that insanity, once proved to exist, is presumed to continue until the contrary is shown, and stated that proof that the petitioner was insane on December 23, 1935, aided by the presumption, was prima facie evidence that he was insane when he entered his pleas; that the judge who accepted them, although advised that the petitioner had been adjudged insane, made no affirmative finding of sanity; and that the evidence did not sustain the finding of the court which heard the petition for the writ of habeas corpus that petitioner had competently and understandingly entered his pleas. Judge Phillips then stated: "It is my conclusion, therefore, that the judgment should be reversed and the cause remanded with instructions to make full inquiry into the mental status of the petitioner at the time he entered the pleas of guilty." The petitioner applied for certiorari. The Supreme Court, on March 25, 1940, Frame v. Hudspeth, 309 U.S. 632, 60 S.Ct. 712, 84 L.Ed. 989, filed a per curiam opinion reading as follows: "The motion for leave to proceed in forma pauperis is granted. The petition for certiorari is also granted, and, upon consent of the Solicitor General, the judgment of the Circuit Court of Appeals is reversed and the cause remanded to the District Court for the purpose of making a full inquiry into the mental status of the petitioner at the time he entered the pleas of guilty."

While it can be argued that this was a mere consent opinion and order, it is persuasive that the Solicitor General and the Supreme Court were of the view that the dissenting opinion of Judge Phillips was correct, and that the petitioner in that case was entitled to have his mental status at the time he entered his pleas competently adjudicated in the habeas corpus proceeding.

We are of the opinion that it cannot be held that a District Court is without power, upon a petition for a writ of habeas corpus, to inquire into the mental status of a petitioner who was presumptively insane at the time of his conviction and sentence and who asserts that the sentencing court was without jurisdiction for that reason.

■ There is, however, a serious question as to the appropriateness of the exercise of that power in a case such as this. The appellant, at the time he applied to Judge Reeves for a writ of habeas corpus, unquestionably had a simple, direct and completely adequate remedy available to him in the court which sentenced him. The remedy was to apply to that court to vacate the sentence on the ground of its illegality. That remedy is still available to the petitioner and is an ordinary remedy established by Rule 35 of the Federal Rules of Criminal Procedure, 18 U.S.C.A. following section 687. The rule provides: "The court may correct an illegal sentence at any time." The rule became effective on March 21, 1946. While it made no change in what had become existing law (see Berkoff v. Humphrey, 8 Cir., 159 F.2d 5, 7 and cases cited; Robinson v. Johnston, 9 Cir., 118 F.2d 998, 1000, 1001), we think the rule did have the effect of making the remedy of moving to vacate or correct a sentence because of illegality an ordinary remedy instead of a somewhat unusual and exceptional one. Prior to the promulgation of Rule 35, a motion to vacate or correct a sentence was frequently met with the contention by the Government that, because of the ending of the term at which the judgment under attack had been entered, the court could not disturb it, or that the motion was in the nature of a writ of error coram nobis and such a writ was not available in federal criminal proceedings, or that the question raised was not one which could be brought up upon such a writ. See Murrey v. United States, 8 Cir., 138 F.2d 94, 96, and cases cited.

■■ It is our understanding that a defendant in a criminal case in the federal courts must follow the regular course of proceedings and exhaust all of the ordinary remedies afforded him before he may resort

to habeas corpus (Johnson v. Hoy, 227 U.S. 245, 247, 33 S.Ct. 240, 57 L.Ed. 497; Glasgow v. Moyer, 225 U.S. 420, 428, 429, 32 S.Ct. 753; 56 L.Ed. 1147; Berkoff v. Humphrey, 8 Cir., 159 F.2d 5, 7); that the hearing on habeas corpus is not in the nature of an appeal nor is it a substitute for the functions of the trial court; and that this is true with respect to both issues of law and fact. Henry v. Henkel, 235 U.S. 219, 229, 35 S.Ct. 54, 59 L.Ed. 203; Berkoff v. Humphrey, supra, 8 Cir., 159 F.2d at page 7; Maye v. Pescor, 8 Cir., 162 F.2d 641.

In Bowen v. Johnston, 306 U.S. 19, 26, 27, 59 S.Ct. 442, 446, 83 L.Ed. 455, Mr. Chief Justice Hughes said: "It must never be forgotten that the writ of habeas corpus is the precious safeguard of personal liberty and there is no higher duty than to maintain it unimpaired. Ex parte Lange, supra [18 Wall. 163, 178, 21 L.Ed. 872]. The rule requiring resort to appellate procedure when the trial court has determined its own jurisdiction of an offense is not a rule denying the power to issue a writ of habeas corpus when it appears that nevertheless the trial court was without jurisdiction. The rule is not one defining power but one which relates to the appropriate exercise of power. It has special application where there are essential questions of fact determinable by the trial court. Rodman v. Pothier, supra [264 U.S. 399, 44 S.Ct. 360, 68 L.Ed. 759]. It is applicable also to the determination in ordinary cases of disputed matters of law whether they relate to the sufficiency of the indictment or to the validity of the statute on which the charge is based. Id.; Glasgow v. Moyer, supra [225 U.S. 420, 32 S.Ct. 753, 56 L.Ed. 1147]; Henry v. Henkel, supra [235 U.S. 219, 35 S.Ct. 54, 59 L.Ed. 203]. But it is equally true that the rule is not so inflexible that it may not yield to exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent."

It was unquestionably a function of the court which tried and sentenced the petitioner to determine whether he was sane or insane. That court has all of the files and records in petitioner's case, which will demonstrate to a certainty what issues were tried and determined. If Judge Rice inadvertently failed to consider the question of petitioner's mental status at the time he was convicted and sentenced, the Judge can do so upon a motion to vacate the sentence which he imposed. If, after a hearing upon such a motion, he should conclude that he had been mistaken in finding or believing the petitioner to be sane either at the time he was tried or at the time he was sentenced, Judge Rice can rectify that mistake. On the other hand, if Judge Rice should deny the petitioner the relief to which he believes himself to be entitled, the Judge's action in so doing would be reviewable by the Circuit Court of Appeals of the Tenth Circuit, and, upon certiorari, by the Supreme Court. As this Court said in Berkoff v. Humphrey, 8 Cir., 159 F.2d 5, 8, — "If the sentence of which appellant complains is illegal, it should be vacated by the court which entered it and not nullified on collateral attack by a court of coordinate jurisdiction."

If the judgment pronounced by Judge Rice were to be nullified by Judge Reeves, that would still leave the petitioner under indictment in the United States District Court for the Eastern District of Oklahoma, and the ultimate disposition of his case would still be for Judge Rice to determine. This is, we think, another reason why petitioner's collateral attack upon the judgment under which he is held should not be sustained. It is certainly in the interest of an orderly administration of justice to require a defendant in a criminal case to exhaust all of his ordinary remedies in the court of original jurisdiction before seeking relief by habeas corpus.

Since we think the petitioner had, and still has, an ordinary remedy which is more adequate and appropriate than habeas corpus, our conclusion is that Judge Reeves did not err in refusing to issue the writ prayed for. The order appealed from is therefore affirmed.