## SMITH v. UNITED STATES.
### No. 10471.

United States Court of Appeals
District of Columbia Circuit

Argued June 30, 1950.

Decided Dec. 7, 1950.

Writ of Certiorari Denied May 7, 1951.

See 71 S.Ct. 792.

Paul A. Porter, Washington, D. C. (appointed by this Court), with whom G. Duane Vieth, Washington, D. C., was on the brief, for appellant.

Charles B. Murray, Asst. U. S. Atty., with whom Messrs. George Morris Fay, U. S. Atty., and Joseph M. Howard, Asst. U. S. Atty., were on the brief, for appellee.

Before WILBUR K. MILLER, FAHY, and WASHINGTON, Circuit Judges.

FAHY, Circuit Judge.

The appeal is by James M. Smith from a denial by the District Court of his motion filed pursuant to 28 U.S.C.A. § 2255.[1] The motion was to vacate a judgment based upon his conviction in February, 1937, of second degree murder after trial by jury in

---

1. "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A motion for such relief may be made at any time.

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the pris-

the court below. He was sentenced to life imprisonment. During his trial he was represented by two attorneys and there was no appeal.[2] He does not complain of lack or inadequacy of counsel.

■ We treat his motion as including not only the paper so entitled but also the Statement of Facts submitted by counsel appointed to represent him on the motion and the Oral Statements of Factual Contentions made by his counsel on argument of the motion below, and reproduced in the Joint Appendix. The District Court held that the allegations of the motion, if proved, would not entitle appellant to relief under § 2255 and accordingly denied the motion.[3] The allegations relied upon, as set forth by counsel appointed by this court to represent appellant on the appeal, are as follows:[4]

"* * * Appellant, while a patient at Mt. Alto Hospital, was arrested by officers of the District of Columbia police on or about August 3, 1935, on a charge of bigamy. Appellant was taken to the Number 2 Precinct House and held there for a period of approximately thirteen days before being taken before a magistrate for arraignment. During this period of detention, appellant was questioned, primarily by Officer W. S. Beck, about a number of crimes, and in particular about the rape and murder for which he was subsequently convicted.

"Appellant was denied the right to communicate with friends or counsel during the period of his detention and was subjected to continuous questioning and physical and psychological torture, coercion and duress in an attempt on the part of Beck and other officers to obtain a confession. Although appellant did not confess to the murder of Mrs. Dancy, Officer Beck testified against appellant in the murder trial with respect to his interrogations during appellant's detention.[5]

"Also, during appellant's detention, Officer Beck forcibly applied black dye to appellant's gray hair, and subsequently presented appellant to witnesses for identification. These witnesses identified appellant and testified against him on the trial."

■■ I. The first reliance of appellant is that when arrested in August, 1935, for bigamy he was detained and mistreated, as stated above, before being taken to a committing magistrate. If a confession resulted and was used in evidence, a conviction should have been reversed on appeal. McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819. That statements of an exculpatory or inculpatory character, rather than a confession, were so obtained and used, would not obviate the error. Bram v. United States, 1897, 168 U.S. 532, 18 S.Ct 183, 42 L.Ed. 568. Further, Watts v. Indiana, 1949, 338 U.S. 49, 69 S.Ct. 1347, 93 L.Ed. 1801, and Malinski v. New York, 1945, 324 U.S. 401, 65 S.Ct. 781, 89 L.Ed. 1029, provide substantial support for the view that the police action here alleged, if it occurred, violated appellant's constitutional rights and that his conviction based on evidence so obtained would have been in violation of the Due Process Clause of the Fifth Amendment. In the Watts case the Court said: "* * * To turn the detention of an accused into a process of wrenching from him evidence which could not be extorted in open court with all its safeguards, is so grave an abuse of the power of arrest as to offend the procedural

---

oner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."

   *     *     *     *     *     *

2. Previously he had been tried and convicted of rape, for which a five to seven year imprisonment sentence was given. The motion to vacate is addressed to

both the murder and the rape convictions but is now moot as to the latter.

3. Previously, another judge of the District Court had continued the matter in order to hear testimony. When it came on before a different judge for disposition the denial of the motion occurred as stated.

4. Page references are omitted.

5. No transcript of the testimony at the trial was available on the hearing on the motion.

standards of due process." 338 U.S. at page 54, 69 S.Ct. at page 1350.

In both the Watts and Malinski cases, however, the attack was direct, by appeal from the judgment of conviction. The proceedings now before us, on the other hand, arise upon a collateral attack under § 2255. Thus the question before us is not whether such a deprivation of constitutional rights requires reversal upon an appeal but whether it provides basis for a motion to vacate under § 2255.

■ We recently indicated that the scope of review on such attack is the same as in habeas corpus cases. Meyers v. United States, 1950, 86 U.S.App.D.C. 320, 181 F.2d 802. Section 2255 was enacted, as stated in the Reviser's Notes, to provide "an expeditious remedy for correcting erroneous sentences without resort to habeas corpus." Since federal prisoners ordinarily are not detained in the jurisdiction in which they were tried and the records reside, habeas corpus proceedings in the jurisdiction of detention presented difficulties avoided by proceedings under § 2255. It is desirable, therefore, to inquire into the scope of review by habeas corpus procedures after conviction of crime.

The Supreme Court has not specifically ruled on the question now before us. Originally habeas corpus was available only to test the jurisdiction of the court rendering the judgment of conviction. In a series of decisions dating from 1915, however, the Supreme Court expanded the scope of the inquiry. In the first of these, Frank v. Mangum, 1915, 237 U.S. 309, 335, 35 S.Ct. 582, 590, 59 L.Ed. 969, the Court said that mob domination of the trial violates due process of law and could be raised on habeas corpus. " * * * if the state, supplying no corrective process, carries into execution a judgment of death or imprisonment based upon a verdict thus produced by mob domination, the state deprives the accused of his life or liberty without due process of law."

But it was thought the petitioner had not proven the domination.

In Moore v. Dempsey, 1923, 261 U.S. 86, 91, 43 S.Ct. 265, 266, 167 L.Ed. 543, the question of mob domination came up on demurrer to an application for writ of habeas corpus, again after conviction in a state court. Holding that the writ should be granted, the Supreme Court said: " * * * It certainly is true that mere mistakes of law in the course of a trial are not to be corrected in that way. But if the case is that the whole proceeding is a mask—that counsel, jury and judge were swept to the fatal end by an irresistible wave of public passion, and that the State Courts failed to correct the wrong, neither perfection in the machinery for correction nor the possibility that the trial court and counsel saw no other way of avoiding an immediate outbreak of the mob can prevent this Court from securing to the petitioners their constitutional rights."

In Mooney v. Holohan, 1935, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, an original writ of habeas corpus was sought in the Supreme Court. It was refused for failure first to exhaust other remedies; but the Court said that due process of law was violated by a state criminal conviction procured by the use of perjured testimony known to be perjured by the prosecutor and that habeas corpus could challenge such a conviction, though not on original application in the Supreme Court.

Johnson v. Zerbst, 1938, 304 U.S. 458, 468, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461, held that " * * * If the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty." Habeas corpus was held a proper method of challenging the conviction.

Bowen v. Johnston, 1939, 306 U.S. 19, 26–27, 59 S.Ct. 442, 446, 83 L.Ed. 455, is heavily relied upon by the appellant. There the petitioner alleged that the United States did not have jurisdiction over the locus of the crime and thus had no jurisdiction to try him. Chief Justice Hughes wrote for the Court: " * * * The rule requiring resort to appellate procedure when the trial court has determined its own jurisdiction of an offense is not a rule denying the power

to issue a writ of *habeas corpus* when it appears that nevertheless the trial court was without jurisdiction. The rule is not one defining power but one which relates to the appropriate exercise of power. It has special application where there are essential questions of fact determinable by the trial court. Rodman v. Pothier, supra [264 U.S. 399, 44 S.Ct. 360, 68 L.Ed. 759]. It is applicable also to the determination in ordinary cases of disputed matters of law whether they relate to the sufficiency of the indictment or to the validity of the statute on which the charge is based, Id.; Glasgow v. Moyer, supra [225 U.S. 420, 32 S. Ct. 753, 56 L.Ed. 1147]; Henry v. Henkel, supra [235 U.S. 219, 35 S.Ct. 54, 59 L.Ed. 203]. But it is equally true that the rule is not so inflexible that it may not yield to exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent."

The exceptional circumstance was "uncertainty and confusion with respect to the question whether offenses within the Chickamauga and Chattanooga National Park are triable in the state or federal courts." The statement of the Court principally relied on by appellant is as follows: " * * But if it be found that the court had no jurisdiction to try the petitioner, or that in its proceedings his constitutional rights have been denied, the remedy of *habeas corpus* is available. Ex parte Lange, 18 Wall. 163, 178, 21 L.Ed. 872; Ex parte Crow Dog, 109 U.S. 556, 572, 3 S.Ct. 396, 406, 27 L.Ed. 1030; In re Snow, 120 U.S. 274, 285, 7 S.Ct. 556, 30 L.Ed. 658; In re Coy, 127 U. S. 731, 758, 8 S.Ct. 1263, 1268, 1272, 32 L.Ed. 274; Ex parte Neilsen, Petitioner, 131 U.S. 176, 182, 9 S.Ct. 672, 674, 33 L.Ed. 118; In re Bonner, 151 U.S. 242, 257, 14 S.Ct. 323, 325, 38 L.Ed. 149; Moore v. Dempsey, 261 U.S. 86, 91, 43 S.Ct. 265, 266, 67 L.Ed. 543; Johnson v. Zerbst, 304 U.S. 458, 467, 58 S. Ct. 1019, 1024, 82 L.Ed. 1461." 306 U.S. at page 24, 59 S.Ct. at page 444.

Smith v. O'Grady, 1941, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859, held that habeas corpus was available to a person convicted in a state court upon a plea of guilty inveigled by state officers. The Court said, 312 U.S. at page 332, 61 S.Ct. at page 573:

"It is therefore our duty to examine petitioner's allegations in order to determine whether they show that his imprisonment is the result of a deprivation of rights guaranteed him by the federal Constitution."

In Williams v. Kaiser, 1945, 323 U.S. 471, 65 S.Ct. 363, 89 L.Ed. 398—and companion case Tomkins v. State of Missouri, 1945, 323 U.S. 485, 65 S.Ct. 370, 89 L.Ed. 407—the Court held that a person convicted of a capital offense who alleges that he was without counsel and that he requested and did not waive counsel, could attack his imprisonment by habeas corpus: " * * * we think the petition makes a *prima facie* showing of denial of the constitutional right." 323 U.S. 474, 65 S.Ct. 365.

Hawk v. Olson, 1945, 326 U.S. 271, 274, 66 S.Ct. 116, 118, 90 L.Ed. 61, also involved the right to counsel. The Court reviewed the habeas corpus cases, and said: "Since Frank v. Mangum, 237 U.S. 309, 331, 35 S.Ct. 582, 588, 59 L.Ed. 969, this Court has recognized that habeas corpus in the federal courts by one convicted of a criminal offense is a proper procedure 'to safeguard the liberty of all persons within the jurisdiction of the United States against infringement through any violation of the Constitution,' even though the events which were alleged to infringe did not appear upon the face of the record of his conviction."

A further review of the decisions is contained in Sunal v. Large, 1947, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982. This case raised the question of the availability of the writ of habeas corpus to attack collaterally a conviction for refusal to report as required by order of the officials administering the Selective Training and Service Act of 1940, 50 U.S.C.A. Appendix, § 301 et seq., when it appeared that the trial court in the criminal case had erred in refusing to permit the accused to defend on the ground of an invalid classification. In holding against the availability of the writ, the Court said, in part:

"It is plain, therefore, that the trial courts erred in denying Sunal and Kulock the defense which they tendered. * * * [But,]

"The normal and customary method of correcting errors of the trial is by appeal. Appeals could have been taken in these cases, but they were not. It cannot be said that absence of counsel made the appeals unavailable as a practical matter. See Johnson v. Zerbst, 304 U.S. 458, 467, 58 S. Ct. 1019, 1024, 82 L.Ed. 1461. Defendants had counsel. * * *" 332 U.S. at pages 176–177, 67 S.Ct. at page 1589.

This is, generally, the status of the Supreme Court decisions as to when habeas corpus is available, with no decision specifically controlling the case now before us. The precise question, however, has been often before the various courts of appeals. Those courts, including our own, have ruled uniformly that the admission of confessions obtained by illegal detention is not a ground for collateral attack against the sentence and judgment following thereupon. Eury v. Huff, 1944, 79 U.S.App.D.C. 289, 146 F. 2d 17; Miller v. Hiatt, 3 Cir., 1944, 141 F.2d 690; Young v. Sanford, 5 Cir., 1945, 147 F.2d 1007; Burall v. Johnson, 9 Cir., 1942, 134 F.2d 614; Cash v. Huff, 4 Cir., 1944, 142 F.2d 60; semble, Vermillion v. Zerbst, 5 Cir., 1938, 97 F.2d 347.

We thus have, on the one hand, Supreme Court opinions stating that habeas corpus is available to correct the denial of any constitutional right, and on the other hand, the decisions of the courts of appeals that convictions based on coerced confessions cannot for that reason alone be set aside on collateral attack by the habeas corpus procedure. Reconciliation perhaps lies in the proper application of the principle so clearly set forth in Sunal v. Large, supra, that habeas corpus cannot be substituted for an appeal; see, also, Bowen v. Johnston, supra, 306 U.S. at pages 26–27, 59 S.Ct. 442. Where the alleged error of the trial court is in the admission of evidence subject to correction on appeal, and there is representation by counsel, habeas corpus is not the appropriate remedy. The cases in which the writ has been deemed available are consistent with this view. The right of appeal may be frustrated in the absence of counsel. To deny habeas corpus in such circumstances would seriously impair the constitutional guaranty of

right of counsel. The mob domination cases, Moore v. Dempsey, supra, and Frank v. Mangum, supra, are instances where in substance the denial of a trial at all was the question. In the perjured testimony case, Mooney v. Holohan, supra, the petitioner did not know of the alleged perjury until after appeal. In Cochran v. State of Kansas, 1942, 316 U.S. 255, 62 S.Ct. 1068, 86 L.Ed. 1453, the allegation was that prison officials had prevented the appeal. It is similar to the right to counsel cases where the right of resort to an appeal is futile. Waley v. Johnston, D.C., 38 F.Supp. 408, and Smith v. O'Grady, supra, are cases in which the facts alleged were outside the record and thus not reviewable on appeal from the conviction.

We referred with apparent approval in Meyers v. United States, supra; [86 U.S.App.D.C. 320, 181 F.2d 803], to the statement therein attributed to Judge Holtzoff, D.C., 84 F.Supp. 766, that errors committed during a trial may not be reviewed by habeas corpus unless involving jurisdiction of the court or "deprivation of Constitutional rights amounting to a denial of the essence of a fair trial, * * *." This we think is a fair statement of the principle to be applied as we read the lesson of the decisions of the Supreme Court.

When, as in Bowen v. Johnston, supra, it is said that there has been a denial of "constitutional rights," (see, to similar effect, Smith v. O'Grady, supra), the whole course of events is to be considered, not merely the erroneous admission of evidence claimed to infringe a right protected by the Constitution. Such admission alone does not result in the denial of a constitutional guaranty so long as the error is subject to correction on appeal and there is no indication of any deterrent to appeal, such as lack of counsel. Accordingly, in such circumstances the method of correction must be direct, not collateral. Otherwise a motion under § 2255 becomes indeed a substitute for the regular judicial process of trial and review. Where, however, the denial of constitutional right persists, through lack of counsel or perjury undiscovered, or mob domination which saps all substance from the trial, or there is lack

of jurisdiction or some other fundamental weakness in the judicial process which has resulted in the conviction, collateral attack is at hand, now under § 2255. For, ordinarily, appeal would be ineffective to preserve the right denied. This is not the situation in the case at bar. Appellant had full opportunity to attack on his trial the evidence now challenged and to appeal on the basis of its erroneous admission if he so desired.

II. The appellant's second point is presented in the following manner:

In his petition for habeas corpus (which was obviously written by a layman) he says: "He was again carried through the same proceeding of inhuman treatment. (Only worst) And that *is by dying his hair 'Color Black'*." After the initial hearing on the sufficiency of the petition, the trial court appointed counsel who prepared a statement of facts upon which he would rely at the hearing. Included in this statement is the following: "That during the period of illegal detention defendant's hair was forcibly dyed by the said Sgt. Beck, and the defendant was thereafter presented to witnesses for purposes of identification." These witnesses identified appellant, evidently as a man seen at or near the place of the murder before its commission. They later testified against him on the trial.

Appellant contends that the presentation at his trial of witnesses who identified him in the above circumstances was so gross a violation of the Due Process Clause of the Fifth Amendment as to oust the court of jurisdiction.

At the outset, it should be noted that the conduct here charged to the police does not constitute self-incrimination. In Ross v. State, 1932, 204 Ind. 281, 282, 182 N.E. 865, 868, a similar point was raised as follows: "Appellant contends that by being produced before the assistant cashier for identification with a handkerchief over his face and when he had a beard of several hours' growth, he was obliged to furnish evidence against himself and was 'being used for the purpose of self-incrimination.' We do not think that the rule against compulsory self-incrimination properly applies to pretrial efforts to identify a suspect as the probable perpetrator of a crime even though these efforts involve physical examination or observation of the suspect against his will. Biggs v. State, 1929, 201 Ind. 200, 167 N.E. 129, 64 A.L.R. 1085. Our Constitution recognizes and protects the privilege against self-incrimination by the following: 'No person in any criminal prosecution, shall be compelled to testify against himself.' Ind. Const. art. 1, § 14; and we have no sympathy with any tendency to evade or nullify this constitutional protection. On the other hand, we think the phrase 'testify against himself' must not be extended irrationally to cover situations clearly outside the plain meaning and the policy back of the privilege. * * *"

The court then quotes extensively from Wigmore who states the privilege to be "the employment of legal process *to extract from the person's own lips* an admission of his guilt, which will thus take the place of other evidence."

Note also the opinion of the Supreme Court in Holt v. United States, 1910, 218 U.S. 245, 252, 31 S.Ct. 2, 6, 54 L.Ed. 1021: "Another objection is based upon an extravagant extension of the 5th Amendment. A question arose as to whether a blouse belonged to the prisoner. A witness testified that the prisoner put it on and it fitted him. It is objected that he did this under the same duress that made his statements inadmissible, and that it should be excluded for the same reasons. But the prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material. The objection in principle would forbid a jury to look at a prisoner and compare his features with a photograph in proof. * *"

The above passage is quoted by this court in McFarland v. United States, 1945, 80 U.S.App.D.C. 196, 150 F.2d 593. See also 8 Wigmore, § 2265.

The situation is somewhat analogous to that presented in Mooney v. Holohan, supra. While there is no contention here that

the witnesses perjured themselves, it would appear that the gravamen of the asserted violation of the Due Process Clause is the knowing use by the State of false testimony. Note 294 U.S. at page 112, 55 S.Ct. at page 342, where the Court speaks of "a deliberate deception of court and jury by the presentation of testimony known to be perjured." However, in the case at bar, in contrast with the Mooney case, the facts were known to petitioner at the trial and objection could then have been made.

Another somewhat analogous case is Hysler v. State of Florida, 1942, 315 U.S. 411, 316 U.S. 642, 62 S.Ct. 688, 86 L.Ed. 932. There the petitioner sought a writ of error *coram nobis* from the Florida Supreme Court, which had previously affirmed his conviction, on the ground that a witness had been coerced into falsely testifying against him. Although the Supreme Court upheld the Florida court's determination that the petitioner's claim was "without substantial foundation," it indicates that the allegation, if proven, is good ground for collateral attack. The parallel between the Hysler case and the instant case is that there the alleged false testimony was obtained by coercion, while here it could be characterized as obtained by trick or artifice. Note also White v. Ragen, 1945, 324 U.S. 760, 763, 65 S.Ct. 978, 89 L.Ed. 1348, where the false testimony was obtained by bribing the witness, and Pyle v. State of Kansas, 1942, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214, another case of coercion and intimidation of the witness.

What was done to the appellant while under detention assumes significance only as relevant to the question whether he had a fair trial. The fact that his hair may have been forcibly dyed, standing alone, does not render him immune from standing trial. He must link this fact with the fairness of his trial. The possible merit to his contention must lie in the circumstance that the witnesses might have been misled. If so, it would appear that the proper place to thrash out such a question was at the trial, by cross-examination or other impeachment of the witnesses. It could well be that changing the color of his hair would not render a

witness' testimony identifying him inadmissible, but rather go to its weight since there would be other factors bearing on the identification. The right to impeach the identifying witnesses and to bring out on cross-examination the facts as to the alleged misconduct of the police are safeguards of appellant's right under the Due Process Clause to a fair trial. Error if any was subject to correction on appeal, the full availability of which is not questioned. For these reasons, as in the case of the allegations discussed above under Part I, his motion papers do not make out a case for a hearing under § 2255.

Affirmed.

The court expresses its appreciation to counsel for appellant, who, on appointment by this court, has ably presented his appeal.