In re QUANTZ.

Habeas Corpus No. 3836.

United States District Court

District of Columbia.

Decided June 2, 1952.

558

James J. Laughlin, for petitioner.

Charles M. Irelan, U. S. Atty., and Joseph M. Howard and Joseph F. Goetten, Asst. U. S. Attys., for respondent.

STEPHENS, Chief Judge of the District of Columbia Circuit:

The petitioner, Walter J. Quantz, after a trial before a judge and jury in the United States District Court for the District of Columbia, was convicted of the crime of abortion and sentenced to imprisonment. He applied to the District Court for leave to appeal *in forma pauperis;* the application was denied. He then made application to the United States Court of Appeals for the District of Columbia Circuit to be allowed to appeal *in forma pauperis;* that application was denied. Quantz then filed a petition in the District Court for the issuance of a writ of habeas corpus; that petition was denied. Quantz then presented a petition to me for a writ of habeas corpus. I denied that petition because it appeared that Quantz had failed to apply for relief by motion, as required by § 2255, Title 28, U.S.C., to the court which sentenced him, and because it did not appear that the remedy by motion would be inadequate or ineffective to test the legality of his detention. Quantz then filed a motion in the District Court, pursuant to § 2255, to vacate the sentence imposed upon him in the criminal proceeding; that motion was denied. Quantz next filed a petition in the District Court for a writ of habeas corpus; that petition was denied. Quantz then filed applications in the District Court for leave to appeal *in forma pauperis* from the order denying the motion to vacate sentence and from the order denying the last mentioned petition for a writ of habeas corpus; those applications were allowed and the appeals were noted. Quantz then filed applications in the Court of Appeals for leave to prosecute those appeals *in forma pauperis;* those applications were allowed and those appeals are presently pending. Quantz moved the Court of Appeals for an immediate hearing of such appeals and for the furnishing at the expense of the United States of a stenographic transcript of the proceedings at the criminal trial; that motion was denied.

 Quantz has now presented a petition to me, for the second time, for a writ of habeas corpus. In view of the previous proceedings in the District Court and the disposition thereof, I entertained the present petition—notwithstanding that in the ordinary course such a petition addressed to an individual judge of the Court of Appeals is denied, the appropriate procedure being to address the same to the District Court or to one of its judges. Brosius v. Botkin (1940), 72 App.D.C. 29, 110 F.2d 49. Upon the ground, among others, that the petition for a writ of habeas corpus fails to state facts which entitle Quantz to the issuance of a writ, the Government opposes the same. The question thus raised is whether or not, assuming the truth of well-pleaded allegations of the petition, they show that there was in the criminal proceeding such a denial of a right or rights guaranteed a defendant in a criminal case by the Constitution as to deprive the District Court of jurisdiction to impose sentence. That is the sole question before me. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct.

1019, 82 L.Ed. 1461 (1938); Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L. Ed. 830 (1941). Even if I should find error in the conduct of the criminal proceeding, I cannot under a petition for a writ of habeas corpus collaterally attacking the jurisdiction of the District Court in that proceeding, set the judgment aside unless the error reaches the level of a deprivation of some right guaranteed by the Constitution. Matters of error not reaching such a level are for determination in an appellate, not in a habeas corpus, proceeding. Smith v. United States (1950), 88 U.S.App.D.C. 80, 187 F.2d 192.

■ Counsel for Quantz urged that the petition for a writ of habeas corpus should be considered in connection with a transcript of the criminal proceeding. The Government opposed. After hearing argument on that subject, I reached the view that in the absence of a transcript of the criminal proceeding I could not satisfactorily pass upon the sufficiency of the allegations of the petition for a writ. Therefore, acting under § 753 of Title 28, U.S.C., I ordered the court reporter to transcribe the criminal proceeding at the expense of the United States and to deliver the transcript to me; that has been done. In determining the sufficiency of the allegations of the petition for a writ, I have treated the full contents of the transcript as a part of the petition for the writ.

The allegations of the petition, supplemented by the transcript, are to the following effect:

1. The trial judge, in the presence of the jury, evidenced spleen and hostility against Quantz' counsel, at the outset by chiding him concerning tardiness in attendance upon the court, and throughout the trial by the nature and manner of the trial judge's rulings. Particular reference is made in this connection to pages 44, 45, 46, 58, and 72 of the transcript.

2. The trial judge refused to allow counsel for Quantz to make certain offers of proof. Particular reference in this connection is made to pages 48, 49, 58, 59, and 94 of the transcript. Those portions of the transcript show the following: There was denial of cross-examination by counsel for Quantz in which it was sought to obtain admissions by the prosecutrix, Miss Helen L. Aldrich,[1] that she had had an improper relationship with a Mr. Bladen. An offer to make proof of this was also denied. An attempt was made by counsel for Quantz to bring out on cross-examination of Miss Aldrich that the same Mr. Bladen was responsible for her pregnancy. Also counsel for Quantz sought to develop on cross-examination that persons other than the defendant were connected with the abortion testified to by Miss Aldrich. The trial judge ruled that the questions related to an immaterial subject. The trial judge also rejected an offer of proof, stating, however, that he understood what was being offered so that there was no need of discussing it. An attempt was made by counsel for Quantz on cross-examination of Miss Aldrich to develop that she had asked Quantz to write a letter to her husband, that Quantz had written such a letter, and that Miss Aldrich herself had later heard from her husband. That was objected to by the Government and the trial judge sustained the objection upon the ground that the questions related to an immaterial matter. Counsel for Quantz then asked Miss Aldrich what conversation she had had with Quantz regarding writing her husband. The Government again objected and the trial judge sustained the objection upon the ground of immateriality. At that point counsel for Quantz sought to make an offer of proof and to come to the bench to do so. The trial judge forbade this.[2]

3. The trial judge excluded relevant cross-examination. Particular reference in this connection is made to pages 36, 48, 52, 53, 58, 70, and 93 of the transcript. Those portions of the transcript show the following: Counsel for Quantz sought to develop upon cross-examination that Miss Aldrich had had previous miscarriages or abortions; that the conduct of Miss Aldrich with the Mr. Bladen above mentioned was improper; that Miss Aldrich either herself completely disrobed, or was completely disrobed by Quantz, at the time

[1] Throughout the transcript the prosecutrix is referred to as Miss Aldrich although, as will appear below, some reference was made, in the course of the proceeding, to her having a husband.

[2] It is contended by counsel for Quantz in a memorandum filed in support of the petition for writ of habeas corpus that if he had been allowed to make this offer of proof it would have been to the effect that in fact Miss Aldrich had had the abortion partially, almost completely, performed by a person other than Quantz, and that Miss Aldrich had had a conversation with Quantz relative to that, and that it was as a result of such conversation that Quantz' services were engaged by Miss Aldrich. Counsel for Quantz urges further in his memorandum that he was seeking, in the questions relating to an asserted conversation between Miss Aldrich and Quantz about writing to her husband, information showing the moral depravity of Miss Aldrich.

of the performance of the abortion testified to by her; that Miss Aldrich had had a first abortion in January 1950.[3] Counsel for Quantz attempted to justify such cross-examination on the ground that it would test the recollection and credibility of the witness, and that it would develop that the Mr. Bladen, above referred to, was responsible for Miss Aldrich's condition, and that persons other than Quantz were connected with the abortion charged. There was attempted cross-examination also concerning an alleged fight between Miss Aldrich and a Chinese woman. There was attempted cross-examination further as to when or how Miss Aldrich removed her clothing at the time of the abortion. All of the foregoing proposed cross-examination was denied by the trial judge.

Counsel for Quantz urges that the conduct and rulings of the trial judge, thus alleged to have occurred, amounted to a denial to Quantz in the criminal proceeding of the effective assistance of counsel guaranteed by the Sixth Amendment to the Constitution and denied Quantz the due process of law guaranteed by the Fifth Amendment. Assuming the truth of the allegations of the petition for a writ, and considering as a part thereof the transcript of the criminal proceeding, my conclusion is to the contrary: 1. So far as concerns the alleged spleen and hostility of the trial judge toward counsel for Quantz, the transcript shows that such alleged spleen and hostility concerned largely the tardiness of counsel for Quantz in attendance upon the court at the outset of the trial—that counsel for Quantz was in effect reprimanded by the court for such tardiness. But the transcript further shows that counsel for the Government was also in effect reprimanded by the trial judge for similar tardiness. Even if the reprimand of counsel for Quantz be assumed to have been improper, I am unable to conclude that it could have so far diminished the confidence of the jury in him as to make his defense of Quantz ineffective. 2. So far as the denials of cross-examination are concerned, assuming the same to have been erroneous, I am unable to conclude that they amounted to a denial of the effective assistance of counsel or of due process of law. 3. So far as the rejections of offers of proof are concerned, assuming that they also were erroneous, I am again unable to conclude

that they reached the level of denial of the effective assistance of counsel or of due process of law.

Accordingly I cannot conclude that the District Court lost jurisdiction to sentence Quantz.

▆▆▆ Counsel for Quantz urges that unless a writ of habeas corpus is issued there will have been a denial of justice because Quantz, being a poor person, was unable, for the purpose of an appeal from the sentence imposed in the criminal proceeding, to obtain a transcript of the same. That contention is in my view not meritorious. The Constitution guarantees a trial, not an appeal; the right to an appeal is statutory. § 1291, Title 28 U.S.C. There is a statutory provision governing the authorization of proceedings, including appeals, *in forma pauperis.* § 1915, Title 28, U.S.C. The pertinent portion thereof reads as follows:

(a) Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a citizen who makes affidavit that he is unable to pay such costs or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that he is entitled to redress.

An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

That provision has been held to require a showing of merit in an appeal sought to be taken *in forma pauperis.* Holland v. Capital Transit Co. (1950) 87 U.S.App.D.C. 48, 184 F.2d 686. Therein the Court of Appeals said:

Subsection (a) of Section 1915 provides that such affidavit 'shall state the nature of the action, defense or appeal . . .' as well as that the petitioner is unable to pay costs or give security therefor. The obvious purpose of this requirement is to enable the court to examine the grounds upon which the action, defense or appeal is based for the purpose of ascertaining whether or not it is of meritorious character—in the case of an appeal where the application for leave to proceed *in forma pauperis* is made by an appellant, whether or not there was probable error in the rulings below. Kinney v. Plymouth Rock Squab Co., 1915, 236 U.S. 43, 35 S.Ct. 236, 59 L.Ed. 457; Smith v. Johnston, 9 Cir., 1940, 109 F.2d 152, 154. As said in the latter case: . . . The statute . . . contemplates that leave to pro-

---

**3.** The indictment charged an abortion in September 1950, and Miss Aldrich's testimony on direct examination related to that.

ceed in forma pauperis should be denied to any applicant therefor unless there is a showing by the applicant of merit in the appeal he desires to prosecute or defend. [184 F.2d at page 689]

Examination of the applications filed in the District Court and in the Court of Appeals for leave to appeal *in forma pauperis* from the sentence in the criminal proceeding discloses the following: In the District Court the application contained no statement concerning the points to be raised on appeal. See Criminal No. 1473—50 in the United States District Court, in which is contained Quantz' notice of appeal and his *in forma pauperis* affidavit. In the Court of Appeals in the application for leave to appeal *in forma pauperis* there was no substantial showing of erroneous rulings, or conduct, of the trial judge. See Misc. No. 274. The application was, so far as its allegations of error are concerned, in conclusional form. The statement was that there were "serious and substantial questions of law involved"; that the trial judge "unduly restricted cross-examination"; that the trial judge erred "in refusing the petitioner the right to go into the moral character of the accused"; that the trial judge was requested to give, but declined to give, a cautionary instruction to the effect that "while the woman was not an accomplice . . . the jury could consider that she morally implicated herself"; the particular terms of the requested instruction were not indicated. Counsel for Quantz now urges that only by having had available the transcript of the criminal proceeding in the District Court could he have made a specific showing in the applications to be allowed to proceed *in forma pauperis* of alleged errors in the rulings of the trial judge. That contention is, I think, not meritorious. The criminal proceeding was not lengthy, the transcript comprises only 170 pages including the instructions to the jury. It would have been possible for counsel for Quantz, during the criminal proceeding, to make notes of the rulings and conduct of which he then complained and now complains, and such notes would have been a sufficient foundation, when implemented by the memory of counsel as an experienced trial lawyer, for a showing in his applications for leave to proceed

*in forma pauperis* of the errors alleged. Counsel cannot in my view properly characterize as a denial of justice the denial of leave to proceed on appeal *in forma pauperis* when he made no substantial showing either to the District Court or to the Court of Appeals of error in the rulings or conduct of the trial judge. The closest approach to any specificity was in reference to the requested instruction alleged to have been refused. If the request was made in the general terms above quoted, the trial judge would properly have rejected it as erroneous.

I conclude that the petition for a writ of habeas corpus should be denied.

Petition denied.